**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| T.S., by and through his parents and guardians, T.M.S. and M.S., individually and derivatively on behalf of the Heart of CarDon, LLC Employee Benefit Plan,<br><br>Plaintiff,<br><br>vs.<br><br>HEART OF CARDON, LLC, and HEART OF CARDON, LLC EMPLOYEE BENEFIT PLAN,<br><br>Defendants. | NO. 1:20-cv-01699-TWP-TAB |

**FIRST AMENDED COMPLAINT**

For years, children diagnosed with autism spectrum disorder ("ASD") had few therapeutic options for meaningful improvement. Treatment options were limited and largely unproven. Today, however, Applied Behavioral Analysis ("ABA") therapy is widely recognized as one of the safest and most effective treatments for autism. It has been endorsed by numerous state and federal agencies, including the U.S. Surgeon General, the National Institute of Mental Health, the American Psychological Association, and various state departments of health. For many children with autism, ABA therapy often represents the best chance for living a happy and productive life.

T.S. is a four-year-old child who has spoken only a few words. He exhibits behaviors like pinching and biting and has challenges in speech and personal-social interaction and communication. After T.S. started ABA therapy, his parents observed that he was quickly

acquiring new skills, like pointing and looking at what others pointed to, and engaging in less pinching and biting behavior.

Defendants Heart of CarDon, LLC Employee Benefit Plan and Heart of CarDon, LLC, the Plan's sponsor, initially pre-authorized coverage of T.S.'s ABA therapy. But a few months later, and despite T.S.'s dramatic improvement, the Plan began denying all coverage for T.S.'s ABA therapy. Unable to afford the costs of ABA therapy on their own, T.S.'s parents were forced to take him out of treatment in February 2019. T.S.'s parents appealed the Plan's decision through the administrator and scrambled to apply for Indiana's Medicaid waiver program so they could get their son back into ABA therapy. T.S. was not able to obtain coverage under a state program and return to ABA therapy until nearly a year later. By that time, T.S.'s mother observed that he had already fallen behind other children his age living with ASD.

Defendants' failure to cover ABA therapy and other services to treat ASD violates the Federal Mental Health Parity Act, the requirements of which are incorporated into the Plan itself, and in the alternative, violates the Affordable Care Act's anti-discrimination provisions. T.S. brings this action to recover the value of the ABA therapy services he was wrongfully denied, damages in an amount to be proven at trial due to Defendant Heart of Cardon's violations of the Affordable Care Act, and to obtain a declaration requiring the Plan to cover medically necessary treatments for ASD in the future.

## I. PARTIES

1.1     T.S. is the four-year-old son and dependent of T.M.S. and M.S., and resides in Monroe County, Indiana. T.S. is a beneficiary, as defined by the Employment Retirement

Security of Act of 1974 (ERISA) § 3(8), 29 U.S.C. § 1002(8), of the Heart of CarDon, LLC Employee

Benefit Plan. T.S.'s coverage is through T.M.S.'s employment with CarDon.

1.2     Defendant Heart of CarDon, LLC Employee Benefit Plan ("Plan") is an employee

welfare benefit plan under ERISA. The Plan is a self-funded group plan that provides both

medical/surgical benefits and mental health/substance use disorder benefits to CarDon

employees and their dependents, such as T.S.

1.3     Defendant Heart of CarDon, LLC ("CarDon") is the "Plan Sponsor" and is a named

fiduciary under ERISA.  It is also a covered "health program or activity" that must comply with

the anti-discrimination provisions of the ACA. As "Plan Sponsor," CarDon designs the benefits to

be offered under the Plan.

1.4     Lucent Health Solutions ("Lucent"), formerly Cypress Benefit Administrators LLC

("Cypress") is the third-party administrator of the Plan and CarDon's agent.

## II.  JURISDICTION AND VENUE

2.1     This Court has subject matter jurisdiction under ERISA § 501(e)(1) and 28 U.S.C.

§ 1331.

2.2     Venue is proper under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because a

defendant resides or may be found in this district, T.S. resides in this district, and injuries giving

rise to the suit occurred in this district. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2)

because, *inter alia*, a defendant resides in this district and a substantial part of the events giving

rise to Plaintiff's claims occurred in this district.

2.3     In conformity with 29 U.S.C. § 1132(h), Plaintiff will serve this First Amended

Complaint by certified mail on the Secretary of Labor and the Secretary of Treasury.

### III.  ASD & ABA THERAPY

3.1    Autism spectrum disorders, also referred to as pervasive developmental disorders, are neurological conditions characterized by "persistent deficits in social communication and social interaction across multiple contexts" and "restricted, repetitive patterns of behavior, interests, or activities." Am. Psychiatric Ass'n, Autism Spectrum Disorder, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM-V"). For a child to be diagnosed with autism, symptoms must be present in early developmental periods and cause "clinically significant impairment in social, occupational, or other important areas of current functioning." *Id.*

3.2    Applied Behavioral Analysis ("ABA") therapy is widely accepted as the most effective form of therapy for autistic children. Caroline Giordano, *Uses of the Class Action Device in Autism Health Benefits Litig.*, 58 Wayne L. Rev. 157, 161 (2012). ABA therapy is a form of behavioral conditioning that "involves repetitive, task-and-reward-based activities designed to teach children skills such as imitating others, making eye contact, listening, and appropriately answering questions." *Id.*

3.3    ABA therapy was developed in the 1960s to assist children with pervasive developmental disorders (including ASD) to learn the skills needed to increase functioning and self-sufficiency. Today, while ABA therapy is occasionally used to treat other disorders (such as severe ADHD or neurological problems stemming from traumatic brain injuries), autistic persons still comprise "the vast majority of ABA therapy recipients." *See https://www.goodtherapy.org/learn-about-therapy/types/applied-behavior-therapy*

3.4 Alternatives to ABA therapy for children with autism are few and none produce similar results. In addition, the FDA has approved two medications, Risperdal and Abilify, to treat certain symptoms associated with autism spectrum disorders.

## IV. THE AFFORDABLE CARE ACT

4.1 Congress enacted the Affordable Care Act ("ACA") in 2010 in an effort to comprehensively reform the nation's health care system to ensure that every American, even if disabled, has access to quality, affordable health care and health care coverage.

4.2 To achieve this goal, among other things, the ACA takes aim at two types of discrimination by group health plans and covered health entities: (1) discrimination in *access* to health coverage (e.g. pre-existing condition exclusions); and (2) discrimination in benefit *design* (e.g. plan provisions which have the effect of excluding coverage on the basis of disability). 42 U.S.C. § 300gg-1 – gg-4; 42 U.S.C. § 18116(a).

4.3 Specifically, Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116(a), provides that "an individual shall not, on the ground prohibited under . . . section 794 of title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity" that receives federal financial assistance. Section 794 of title 29 prohibits discrimination on the basis of a disability (also referred to as Section 504 of the Rehabilitation Act of 1973).

4.4 As noted above, CarDon is a covered "health program or activity" subject to Section 1557 because it is principally engaged in the business of providing healthcare and receives federal financial assistance in the form of Medicaid and Medicare payments. *See* 45 C.F.R. § 92.2(a) (effective until Aug. 18, 2020); 45 C.F.R. § 92.3(a) (effective after Aug. 18, 2020);

*See, e.g.,* 81 Fed. Reg. 31,445 (skilled nursing facilities and home health agencies are "covered entities").

4.5     Since CarDon is a covered health entity, it must comply with Section 1557 of the ACA, and it may not discriminate on the basis of disability in the benefit design of the health benefits it offers to its employees and their dependents, including T.S.  *See* 45 C.F.R. §§ 92.207, 92.208.

## V.  THE FEDERAL PARITY ACT

5.1     On October 3, 2008, Congress passed the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, commonly known as the Federal Mental Health Parity Act. The Federal Parity Act expanded the scope of previous federal legislation on access to mental health coverage and was "designed to end discrimination in the provision of coverage for mental health and substance use disorders, as compared to medical and surgical conditions." *Coalition for Parity v. Sebelius*, 709 F. Supp. 2d 10, 13 (D.D.C. 2010). The Federal Parity Act requires that the exclusions and limitations imposed on mental health services are "no more restrictive" than those applied to substantially all medical and surgical benefits. *See* 29 U.S.C. § 1185a(a)(3); 42 U.S.C. § 300gg-5(a)(3); 26 U.S.C. § 9812(a)(3). The Federal Parity Act took effect as of October 3, 2009.

## VI.  FACTUAL ALLEGATIONS

6.1     T.S. is a four-year-old child who was diagnosed with autism spectrum disorder in September 2018 by Jordan Huskins, M.D., at the Riley Hospital for Children.

6.2     T.S. is a "qualified individual with a disability" under both Section 1557 and Section 504.  T.S. has a mental impairment, ASD, that substantially limits one or more of his

major life activities, including, without limitation, performing manual tasks, walking, speaking, learning, concentrating, thinking, and communicating. 29 U.S.C. § 705(20)(B).

6.3     Based on information and belief, all or the vast majority of individuals diagnosed with ASD, Asperger's and/or pervasive developmental disorders who need medical or mental health treatment for those conditions, are "qualified individuals with disabilities" under Section 1557 and Section 504.

6.4     Dr. Huskins has recommended ABA therapy as medically necessary for T.S. to achieve developmental advances and maintain his gross and fine motor and speech and communication skills. *See* Appendix A.

6.5     T.S. received ABA therapy at the HopeBridge Autism Therapy Center in Bloomington, Indiana.

6.6     On November 29, 2018, the Plan's third-party administrator at the time, Indiana University Health Plans, sent a notice to T.S.'s ABA therapy provider pre-authorizing six months of ABA therapy services. *See* Appendix B.

6.7     T.S. began receiving ABA therapy treatments at HopeBridge pursuant to that authorization in December 2018.

6.8     Molly Ellis, BCBA, provided ABA therapy to treat T.S.'s identified diagnoses of ASD (F84.0), and Global Developmental Delay (F88.0). These conditions are all listed in the "Mental, Behavioral and Neurodevelopmental Disorders" chapter of the International Statistical Classification of Diseases and Related Health Problems, 10th Revision, known as the ICD-10. *See* Appendix C. These conditions all correspond to specific mental health conditions listed in the latest version of the Diagnostic and Statistical Manual of Mental Disorders ("DSM").

-7-

6.9     On January 1, 2019, the Plan's third-party administrator changed to Cypress Benefit Administrators LLC ("Cypress"). Cypress sent an Explanation of Benefits dated March 14, 2019, denying coverage for T.S.'s ABA therapy services. *See* Appendix D.

6.10    When T.S.'s claims were first submitted to Cypress, the claims were denied on the following basis: "insurance update needed from member." *Id.*

6.11    T.S.'s mother spent months trying to provide the "insurance update" requested. In June 2019, Cypress issued new Explanation of Benefits documents denying coverage for T.S.'s ABA therapy and listing as a reason: "No benefits allowed for this service/diagnosis. See the General Exclusions under your plan." *See* Appendix E. This reason was not given in the original Explanation of Benefits documents Cypress issued.

6.12    Neither coverage for ASD or ABA therapy are addressed in the section of the Plan entitled "General Limitations and Exclusions." *See* Appendix F at 44.

6.13    Instead, in section entitled "Exclusions" under the section Medical Benefits, the Plan states: "Some healthcare services not covered by the Plan." In a further subsection entitled "Behavioral Health," the plan lists as excluded: "Charges for services, supplies, or treatment for Autism, Asperger's and Pervasive Developmental Disorders" and "Charges for Applied Behavior Analysis (ABA Therapy)." *Id.* at 104.  (Hereinafter, collectively, the "Behavioral Health Exclusion").

6.14    In August 2019, T.S.'s mother appealed the benefits determinations to Cypress under the terms of the Plan. *See* Appendix G.

6.15    The Plan provides that appeals will be resolved within 30 days. Appendix F at 56.

6.16    ***The Plan did not respond to T.S.'s appeal for seven (7) months.*** On March 31, 2020, Lucent Health Solutions, sent T.S.'s counsel a letter stating that the claims were correctly denied because they are not covered under the terms of the Plan. *See* Appendix H.

6.17    T.S. has exhausted his administrative remedies.

6.18    T.S. requires ABA services to treat his ASD, a developmental mental health condition.

6.19    T.S. did not receive ABA therapy from February 2019 through March 2020 because his parents could not afford to pay for the therapy without insurance.

6.20    ABA services are outpatient "mental health services" under the terms of the Plan and state and federal law. *See* 29 U.S.C. § 1185a(e)(4).

6.21    The Plan, however, had denied all coverage of ABA therapy to treat ASD.

6.22    The Plan's exclusion of all coverage for ABA therapy to treat ASD violates the Mental Health Parity Act, both facially and as applied.

6.23    ***Facially,*** the Plan violates the Parity Act by applying a separate exclusion of all coverage of "behavioral health" services to treat ASD. 29 U.S.C. § 1185a(a)(3)(A)(ii). On its face, the Plan excludes only mental health services to treat ASD.

6.24    According to the literal terms of the Plan, this exclusion is not a "permanent exclusion of all coverage" for a particular condition. *See* 29 C.F.R. § 2590.712(c)(2)(i).

6.25    The Plan covers various medical/surgical services to treat ASD, including development delay and ASD screening/diagnostic services, prescription drugs, and pediatric visits.

6.26    Specifically, the Plan covers the two prescription medications approved by the FDA to treat ASD, Risperdal and Abilify, without any limitation based on diagnosis. *See* Appendices I, J, K.

6.27    The Plan also violates the Parity Act ***as applied***. Based on T.S.'s administrative record and the plan documents, the Plan only excludes ABA therapy to treat ASD while generally covering all outpatient medical/surgical services. As such, the exclusion is a "separate treatment limitation . . . that [is] applicable only with respect to mental health or substance use disorder benefits." 29 U.S.C. § 1185a(a)(3)(A)(ii).

6.28    Alternatively, the Plan does not apply its exclusion of ABA therapy to treat ASD "at parity" with its coverage of all outpatient medical/surgical services. *Id.* The Plan's decision to impose an ABA therapy exclusion—without evaluating the service for efficacy, medical necessity, or whether it is "experimental/investigational"—was not "at parity" with its processes and procedures for determining the exclusion of other medical/surgical services. Based on information and belief, when medical/surgical services are excluded by the Plan, the exclusion is imposed because the services are deemed experimental/investigational, not medically necessary, or less effective than other less costly alternatives.

6.29    In Defendants' Motion for Judgment on the Pleadings, they argued that the Behavioral Health Exclusion is not only applied to mental health services. Instead, they argued that it "categorically excludes" all coverage for "services, supplies or treatment for Autism, Asperger's and Pervasive Developmental Disorders" including ABA therapy for ASD. *See* Dkt. No. 23, p.1.

6.30    If Defendants designed and administered the Behavioral Health Exclusion as a categorical exclusion of all coverage for ASD, Asperger's and pervasive developmental disorders, Defendant CarDon violated Section 1557 of the ACA, by discriminating on the basis of disability against T.S.

6.31    Based upon information and belief, all or virtually all enrollees in the Plan, designed and sponsored by CarDon, who seek coverage for "services, supplies or treatment" for ASD, Asperger's and pervasive developmental disorders, and/or ABA therapy to treat their ASD are "qualified individuals with disabilities" under Section 1557 and Section 504.

6.32    Based on information and belief, few if any non-disabled enrollees had claims denied by Defendants under the Behavioral Health Exclusion.

**VII.  COUNT I**
**Claim for recovery of benefits, clarification of rights under terms of the Plan, and clarification of right to future benefits under the Plan ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)**

7.1    T.S. re-alleges all the paragraphs above.

7.2    ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides that a participant or beneficiary may bring an action to "recover benefits due to him under the terms of his plan, to enforce rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

7.3    The terms of an ERISA plan include non-preempted provisions of substantive law, such as the requirements of the Federal Parity Act. The Plan has failed to comply with the terms of the Plan, which include the requirements of the Federal Parity Act and its implementing regulations.

7.4     Federal Parity Act permits plans to exclude all coverage for certain conditions. But because the Plan's ASD-related exclusions are only exclusions for "Behavioral Health" related to ASD, they are not a complete exclusion for all care related ASD and are therefore impermissible under the Federal Parity Act.

7.5     T.S. is entitled to recover benefits due to him under the terms of the Plan. He is entitled to a declaration of present and future rights to coverage of ABA services and other medically necessary mental health treatments to treat his ASD.

## VIII.  COUNT II

**Claim to enjoin acts and practices in violation of the terms of the Plan, to obtain other equitable relief, and to enforce the terms of the Plan**
**ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)**

8.1     T.S. re-alleges all the paragraphs above.

8.2     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), provides that a participant or beneficiary may "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan." T.S. seeks to enjoin Defendants from continuing to apply exclusions and limitations on all coverage of ABA therapy to treat qualified mental health conditions. T.S. also seeks corrective notice and reformation of the relevant Plan documents, consistent with the requirements of the Mental Health Parity Act.

8.3     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), further provides that a participant or beneficiary may obtain other appropriate equitable relief to redress violations of ERISA or enforce Plan terms. To the extent full relief is not available under ERISA § 502(a)(1)(b), 29 U.S.C. § 1132(a)(1)(B), then T.S. seeks equitable remedies including, without limitation, unjust enrichment, disgorgement, restitution, surcharge and consequential damages arising out of the

Defendants' failure to administer the terms of the Plan as modified by the Parity Act and implementing regulations.

### IX.  COUNT III

**In the Alternative, Claim for Violation of the Affordable Care Act, 42 U.S.C. § 18116**

9.1     T.S. re-alleges all paragraphs above.

9.2     42 U.S. § 18116(a), provides that "an individual shall not, on the ground prohibited under . . . [29 U.S.C. § 794], be excluded from participation in, denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."

9.3     CarDon is a health program or activity a part of which receives federal financial assistance and is therefore a covered entity for the purposes of 42 U.S.C. § 18116(a).

9.4     T.S. is a "qualified individual with a disability" under the Rehabilitation Act of 1973 because T.S. has a mental impairment, ASD, that substantially limits one or more of T.S.'s major life activities, including, without limitation, performing manual tasks, walking, speaking, learning, concentrating, thinking, and communicating. *See* 29 U.S.C. § 705(20)(B).

9.5     CarDon violates the ACA by discriminating against T.S. on the basis of his disability in its employee health benefit program in at least three ways. First, CarDon designed and caused the Plan to administer the Behavioral Health Exclusion, which  it asserts is a categorical exclusion of all coverage for ASD to deny claims for medically necessary treatment. According to CarDon, under the exclusion, only people with ASD, Asperger's, or other pervasive developmental disorders, each qualifying disabilities, are excluded from the benefits that they require to treat their disabilities.  This is a form of intentional, facial discrimination.

9.6     Second, to the extent CarDon claims that not all people with ASD, Asperger's or other pervasive developmental disorders are "qualified individuals with disabilities," such that the Behavioral Health Exclusion applies to disabled and non-disabled enrollees alike, the categorical exclusion is a "proxy" for people with disabling ASD, Asperger's or other pervasive developmental disorders. *See McWright v. Alexander,* 982 F.2d 222, 228 (7th Cir. 1992).  Under the proxy analysis, the Behavioral Health Exclusion is also a form of intentional discrimination.

9.7     Third, CarDon separately excludes all coverage for ABA therapy—a treatment that, in the vast majority of cases, is used to treat autism. This policy, though seemingly neutral, excludes coverage for services that are so closely associated with autism that the exclusion effectively discriminates on the basis of T.S.'s disability. Thus, it is also a form of intentional "proxy discrimination."  *See id*.

9.8     By excluding benefits for all health care related to ASD, Asperger's and pervasive developmental disorders, and for ABA Therapy specifically, CarDon has intentionally discriminated, and continues to discriminate, on the basis of disability against T.S. and others like him.  *See Schmitt v. Kaiser Foundation Health Plan of Washington,* 965 F.3d 945 (9th Cir. 2020).  CarDon has already advised the Court that it intentionally designed the Plan to exclude all such coverage in Defendants' motion for judgment on the pleadings in this matter. Filing No. 23.

## X.  PRAYER FOR RELIEF

A.     Declare that the Plan may not apply contract provisions, policies, or practices that wholly exclude or impermissibly limit ABA services to treat ASD and developmental mental

health conditions, given that such exclusions or limitations are not predominately applied to medical and surgical services;

      B.      Enjoin the Plan from further violations of the terms of the Plan as modified by the Federal Parity Act and implementing regulations;

      C.      Award T.S. the value of the ABA therapy services he missed between February 2019 and March 2020 as a result of the Plan's failure to cover the services.

      D.      Award T.S. damages in an amount to be proven at trial due to Defendant CarDon's violation of 42 U.S.C. § 18116(a);

      E.      Enjoin Defendant CarDon and its agent Lucent from designing, administering, or applying the Behavioral Health Exclusion and/or other similar violations of the Affordable Care Act, now and in the future;

      F.      Award T.S. his attorneys' fees and costs under ERISA § 502(g), 29 U.S.C. § 1132(g) and 42 U.S.C. § 1988; and

      G.      Award such other relief as is just and proper.

      RESPECTFULLY SUBMITTED AND DATED this 14th day of September, 2020.

TERRELL MARSHALL LAW GROUP PLLC936

By: /s/ Blythe H. Chandler, *Admitted Pro Hac Vice*
    Toby J. Marshall, *admitted pro have vice*
    Blythe H. Chandler, *admitted pro have vice*
    North 34th Street, Suite 300
    Seattle, Washington 98103-8869
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450
    Email:  tmarshall@terrellmarshall.com
    Email:  bchandler@terrellmarshall.com
    Email: eadams@terrellmarshall.com

Syed Ali Saeed (#28759-49)
SAEED & LITTLE, LLP
1433 North Meridian Street, Suite 202
Indianapolis, Indiana 46202
Telephone: (317) 614-5741
Facsimile:  1-888-422-3151
Email:  ali@sllawfirm.com


Eleanor Hamburger, *admitted pro have vice*
SIRIANNI YOUTZ SPOONEMORE
  HAMBURGER PLLC
3101 Western Avenue, Suite 350
Seattle, Washington 98121
Telephone: (206) 223.0303
Facsimile: (206) 223-0246
Email: ehamburger@sylaw.com

*Attorneys for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I, Blythe H. Chandler, hereby certify that on September 14, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

W. James Hamilton (#20155-49)
Andrew M. McNeil (#19140-49)
Mark A. Wohlford (#31568-03)
BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, Indiana 46204
Telephone: (317) 684-5000
Facsimile: (317) 684-5173
Email: jhamilton@boselaw.com
Email: amcneil@boselaw.com
Email: mwohlford@boselaw.com

*Attorney for Defendants, Heart of CarDon, LLC and Heart of CarDon, LLC Employee Benefit Plan*

DATED this 14th day of September, 2020.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Blythe H. Chandler, *Admitted Pro Hac Vice*
     Blythe H. Chandler, *Admitted Pro Hac Vice*
     936 North 34th Street, Suite 300
     Seattle, Washington 98103-8869
     Telephone: (206) 816-6603
     Facsimile: (206) 319-5450
     Email:  bchandler@terrellmarshall.com

*Attorneys for Plaintiff*

-17-