UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| T.S., by and through his parents and guardians, T.M.S. and M.S., individually and derivatively on behalf of the Heart of CarDon, LLC Employee Benefit Plan, <br><br> Plaintiffs, <br><br> v. <br><br> HEART OF CARDON, LLC, and HEART OF CARDON, LLC EMPLOYEE BENEFIT PLAN, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO. 1:20-cv-01699-TWP-TAB |

## ANSWER TO FIRST AMENDED COMPLAINT

The defendants, Heart of CarDon, LLC ("CarDon") and Heart of CarDon, LLC Employee

Benefit Plan (the "Plan") (jointly, "Defendants"), by counsel, for their answer to the First Amended

Complaint filed by the plaintiffs, T.S., by and through his parents and guardians, T.M.S. and M.S.,

individually and derivatively on behalf of the Heart of CarDon, LLC Employee Benefit Plan

(collectively, "Plaintiffs"), state as follows:

### [Unnumbered Introductory Statement]

For years, children diagnosed with autism spectrum disorder ("ASD") had few therapeutic

options for meaningful improvement. Treatment options were limited and largely unproven.

Today, however, Applied Behavioral Analysis ("ABA") therapy is widely recognized as one of

the safest and most effective treatments for autism. It has been endorsed by numerous state and

federal agencies, including the U.S. Surgeon General, the National Institute of Mental Health, the

American Psychological Association, and various state departments of health. For many children

with autism, ABA therapy often represents the best chance for living a happy and productive life.

T.S. is a four-year-old child who has spoken only a few words.  He exhibits behaviors like pinching and biting and has challenges in speech and personal-social interaction and communication.  After T.S. started ABA therapy, his parents observed that he was quickly acquiring new skills, like pointing and looking at what others pointed to, and engaging in less pinching and biting behavior.

Defendants Heart of CarDon, LLC Employee Benefit Plan and Heart of CarDon, LLC, the Plan's sponsor, initially pre-authorized coverage of T.S.'s ABA therapy.  But a few months later, and despite T.S.'s dramatic improvement, the Plan began denying all coverage for T.S.'s ABA therapy.  Unable to afford the costs of ABA therapy on their own, T.S.'s parents were forced to take him out of treatment in February 2019.  T.S.'s parents appealed the Plan's decision through the administrator and scrambled to apply for Indiana's Medicaid waiver program so they could get their son back into ABA therapy.  T.S. was not able to obtain coverage under a state program and return to ABA therapy until nearly a year later.  By that time. T.S.'s mother observed that he had already fallen behind other children his age living with ASD.

Defendants' failure to cover ABA therapy and other services to treat ASD violates the Federal Mental Health Parity Act, the requirements of which are incorporated into the Plan itself, and in the alternative, violates the Affordable Care Act's anti-discrimination provisions.  T.S. brings this action to recover the value of the ABA therapy services he was wrongfully denied, damages in an amount to be proven at trial due to Defendant Heart of Cardon's violations of the Affordable Care Act, and to obtain a declaration requiring the Plan to cover medically necessary treatments for ASD in the future.

**ANSWER**:  These four introductory paragraphs violate Rule 8(d)(1) of the Federal Rules of Civil Procedure.  They are not "simple, concise and direct" allegations.  As written, Defendants

cannot respond to these four introductory paragraphs and therefore deny all factual allegations set forth therein.

**I. PARTIES**

1.1     T.S. is the four-year-old son and dependent of T.M.S and M.S., and resides in Monroe County, Indiana. T.S. is a beneficiary, as defined by the Employment Retirement Security Act of 1974 (ERISA) § 3(8), 29 U.S.C. § 1002(8), of the Heart of CarDon, LLC Employee Benefit Plan. T.S.'s coverage is through T.M.S.'s employment with CarDon.

**ANSWER**:  Defendants admit that T.S. is a beneficiary of the Plan pursuant to ERISA by virtue of T.M.S.'s employment with CarDon.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 1.1 of the First Amended Complaint.

1.2     Defendant Heart of CarDon, LLC Employee Benefit Plan ("Plan") is an employee welfare benefit plan under ERISA. The Plan is a self-funded group plan that provides both medical/surgical benefits and mental health/substance use disorder benefits to CarDon employees and their dependents, such as T.S.

**ANSWER**:  Defendants admit the allegations set forth in paragraph 1.2 of the First Amended Complaint.

1.3     Defendant Heart of CarDon, LLC ("CarDon") is the "Plan Sponsor" and is a named fiduciary under ERISA. It is also a covered "health program or activity" that must comply with the anti-discrimination provisions of the ACA. As "Plan Sponsor," CarDon designs the benefits to be offered under the Plan.

3

**ANSWER**: Defendants admit the allegations set forth in the first and third sentences of paragraph 1.3 of the First Amended Complaint. They deny the remaining allegations set forth in paragraph 1.3 of the First Amended Complaint.

1.4     Lucent Health Solutions ("Lucent"), formerly Cypress Benefit Administrators LLC ("Cypress") is the third-party administrator of the Plan and CarDon's agent

**ANSWER**: Defendants admit that Lucent is the current third-party administrator of the Plan. Defendants deny the remaining allegations set forth in paragraph 1.4 of the First Amended Complaint.

## II. JURISDICTION AND VENUE

2.1     This Court has subject matter jurisdiction under ERISA § 502(e)(1), 28 U.S.C. §1331.

**ANSWER**: Defendants admit the allegations set forth in paragraph 2.1 of the First Amended Complaint.

2.2     Venue is proper under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because a defendant resides or may be found in this district, T.S. resides in this district, and injuries giving rise to the suit occurred in this district. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because, *inter alia*, a defendant resides in this district and a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

**ANSWER**: Defendants admit that venue is proper in this district but deny that any violations of ERISA occurred or that the Plaintiffs are entitled to the relief sought.

2.3     In conformity with 29 U.S.C. § 1132(h), Plaintiff will serve this First Amended Complaint by certified mail on the Secretary of Labor and the Secretary of Treasury.

**ANSWER**: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 2.3 of the First Amended Complaint.

### III. ASD & ABA THERAPY

3.1     Autism spectrum disorders, also referred to as pervasive developmental disorders, are neurological conditions characterized by "persistent deficits in social communication and social interaction across multiple contexts" and "restricted, repetitive patterns of behavior, interests, or activities." Am. Psychiatric Ass'n, Autism Spectrum Disorder, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM-V"). For a child to be diagnosed with autism, symptoms must be present in early developmental periods and cause "clinically significant impairment in social, occupational, or other important areas of current functioning." *Id.*

**ANSWER**: To the extent Plaintiffs are quoting from DSM-V, the DSM-V speaks for itself and Defendants deny any allegations contrary to or inconsistent with the text. Defendants are without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 3.1 of the First Amended Complaint.

3.2     Applied Behavioral Analysis ("ABA") therapy is widely accepted as the most effective form of therapy for autistic children. Caroline Giordano, *Uses of the Class Action Device in Autism Health Benefits Litig.,* 58 Wayne L. Rev. 157, 161 (2012). ABA therapy is a form of behavioral conditioning that "involves repetitive, task-and-reward-based activities designed to teach children skills such as imitating others, making eye contact, listening, and appropriately answering questions." *Id.*

**ANSWER**: To the extent Plaintiffs are citing from a law review article, Plaintiffs are not alleging facts to which a response is required. To the extent a response is required, Defendants are

without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 3.2 of the First Amended Complaint.

3.3    ABA therapy was developed in the 1960s to assist children with pervasive developmental disorders (including ASD) to learn the skills needed to increase functioning and self-sufficiency. Today, while ABA therapy is occasionally used to treat other disorders (such as severe ADHD or neurological problems stemming from traumatic brain injuries), autistic persons still comprise "the vast majority of ABA therapy recipients." *See https://www.goodtherapy.org/learn-about-therapy/types/applied-behavior-therapy*[.]

**ANSWER:**  Plaintiffs are not alleging facts to which a response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 3.3 of the First Amended Complaint.

3.4    Alternatives to ABA therapy for children with autism are few and none produce similar results. In addition, the FDA has approved two medications, Risperdal and Abilify, to treat certain symptoms associated with autism spectrum disorders.

**ANSWER:**  Plaintiffs are not alleging facts to which a response is required. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 3.4 of the First Amended Complaint.

**IV. THE AFFORDABLE CARE ACT**

4.1    Congress enacted the Affordable Care Act ("ACA") in 2010 in an effort to comprehensively reform the nation's health care system to ensure that every American, even if disabled, has access to quality, affordable health care and health care coverage.

**ANSWER:** Paragraph 4.1 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny any factual allegations in paragraph 4.1 of the First Amended Complaint.

4.2 To achieve this goal, among other things, the ACA takes aim at two types of discrimination by group health plans and covered health entities: (1) discrimination in *access* to health coverage (e.g. pre-existing condition exclusions); and (2) discrimination in benefit *design* (e.g. plan provisions which have the effect of excluding coverage on the basis of disability). 42 U.S.C. § 300gg-1 – gg-4; 42 U.S.C. §18116(a).

**ANSWER:** Paragraph 4.2 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny any factual allegations in paragraph 4.2 of the First Amended Complaint.

4.3 Specifically, Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116(a), provides that "an individual shall not, on the ground prohibited under . . . section 794 of title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity" that receives federal financial assistance. Section 794 of title 29 prohibits discrimination on the basis of a disability (also referred to as Section 504 of the Rehabilitation Act of 1973.

**ANSWER:** Paragraph 4.3 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny any factual allegations in paragraph 4.3 of the First Amended Complaint.

4.4 As noted above, CarDon is a covered "health program or activity" subject to Section 1557 because it is principally engaged in the business of providing healthcare and receives federal financial assistance in the form of Medicaid and Medicare payments. *See* 45 C.F.R.

7

§ 92.2(a) (effective until Aug. 18, 2020); 45 C.F.R. § 92.3(a) (effective after Aug. 18, 2020); *See, e.g.,* 81 Fed. Reg. 31,445 (skilled nursing facilities and home health agencies are "covered entities").

**ANSWER:** Defendants admit that CarDon is principally engaged in the business of providing healthcare and receives Medicaid and Medicare payments. Defendants deny the remaining allegations set forth in paragraph 4.4 of the First Amended Complaint.

4.5 Since CarDon is a covered health entity, it must comply with Section 1557 of the ACA, and it may not discriminate on the basis of disability in the benefit design of the health benefits it offers to its employees and their dependents, including T.S. *See* 45 C.F.R. §§ 92.207, 92.208.

**ANSWER:** Defendants deny the allegations set forth in paragraph 4.4 of the First Amended Complaint.

## V. THE FEDERAL PARITY ACT

5.1 On October 3, 2008, Congress passed the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008, commonly known as the Federal Mental Health Parity Act. The Federal Parity Act expanded the scope of previous federal legislation on access to mental health coverage and was "designed to end discrimination in the provision of coverage for mental health and substance use disorders, as compared to medical and surgical conditions." *Coalition for Parity v. Sebelius,* 709 F. Supp. 2d 10, 13 (D.D.C. 2010). The Federal Parity Act requires that the exclusions and limitations imposed on mental health services are "no more restrictive" than those applied to substantially all medical and surgical benefits. *See* 29 U.S.C. § 1185a(a)(3); 42 U.S.C. § 300gg-5(a)(3); 26 U.S.C. § 9812(a)(3). The Federal Parity Act took effect as of October 3, 2009.

**ANSWER**:  Paragraph 5.1 states legal conclusions to which no response is required.  To the extent a response is required, Defendants deny any factual allegations in paragraph 5.1 of the First Amended Complaint.

## VI. FACTUAL ALLEGATIONS

6.1     T.S. is a four-year-old child who was diagnosed with autism spectrum disorder in September 2018 by Jordan Huskins, M.D., at the Riley Hospital for Children.

**ANSWER**:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 6.1 of the First Amended Complaint.

6.2     T.S. is a "qualified individual with a disability" under both Section 1557 and Section 504. T.S. has a mental impairment, ASD, that substantially limits one or more of his major life activities, including, without limitation, performing manual tasks, walking, speaking, learning, concentrating, thinking, and communicating. 29 U.S.C. § 705(20)(B).

**ANSWER:**  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 6.2 of the First Amended Complaint.

6.3     Based on information and belief, all or the vast majority of individuals diagnosed with ASD, Asperger's and/or pervasive developmental disorders who need medical or mental health treatment for those conditions, are "qualified individuals with disabilities" under Section 1557 and Section 504.

**ANSWER:**  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 6.3 of the First Amended Complaint.

6.4     Dr. Huskins has recommended ABA therapy as medically necessary for T.S. to achieve developmental advances and maintain his gross and fine motor and speech and communication skills. *See* Appendix A.

9

**ANSWER**:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 6.4 of the First Amended Complaint.

6.5     T.S. received ABA therapy at the HopeBridge Autism Therapy Center in Bloomington, Indiana.

**ANSWER**:  Defendants admit the allegations set forth in paragraph 6.5 of the First Amended Complaint.

6.6     On November 29, 2018, the Plan's third-party administrator at the time, Indiana University Health Plans, sent a notice to T.S.'s ABA therapy provider pre-authorizing six months of ABA therapy services. *See* Appendix B.

**ANSWER**:  Defendants admit the allegations set forth in paragraph 6.6 of the First Amended Complaint.  By further way of answer, this action by Indiana University Health Plans was unauthorized, incorrect, and contrary to the terms of the Plan.

6.7     T.S. began receiving ABA therapy treatments at HopeBridge pursuant to that authorization in December 2018.

**ANSWER**:  Defendants admit the allegations set forth in paragraph 6.7 of the First Amended Complaint. By further way of answer, the "authorization" by Indiana University Health Plans was unauthorized, incorrect, and contrary to the terms of the Plan.

6.8     Molly Ellis, BCBA, provided ABA therapy to treat T.S.'s identified diagnoses of ASD (F84.0), and Global Developmental Delay (F88.0). These conditions are all listed in the "Mental, Behavioral and Neurodevelopmental Disorders" chapter of the International Statistical Classification of Diseases and Related Health Problems, 10th Revision, known as the ICD-10. *See* Appendix C. These conditions all correspond to specific mental health conditions listed in the latest version of the Diagnostic and Statistical Manual of Mental Disorders ("DSM").

**ANSWER**:  To the extent Plaintiffs are quoting from the ICD or a version of the DSM, those materials speak for themselves and Defendants deny any allegations contrary to or inconsistent with the text. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in paragraph 6.8 of the First Amended Complaint.

6.9     On January 1, 2019, the Plan's third-party administrator changed to Cypress Benefit Administrators LLC ("Cypress"). Cypress sent an Explanation of Benefits dated March 14, 2019, denying coverage for T.S.'s ABA therapy services. *See* Appendix D.

**ANSWER**:  Defendants admit the allegations set forth in paragraph 6.9 of the First Amended Complaint.

6.10    When T.S.'s claims were first submitted to Cypress, the claims were denied on the following basis: "insurance update needed from member." *Id.*

**ANSWER**:  To the extent Plaintiffs are quoting from an explanation of benefits, the explanation of benefits speaks for itself and Defendants deny any allegations contrary to or inconsistent with the text.

6.11    T.S.'s mother spent months trying to provide the "insurance update" requested. In June 2019, Cypress issued new Explanation of Benefits documents denying coverage for T.S.'s ABA therapy and listing as a reason: "No benefits allowed for this service/diagnosis. See the General Exclusions under your plan." *See* Appendix E. This reason was not given in the original Explanation of Benefits documents Cypress issued.

**ANSWER**:  To the extent Plaintiffs are quoting from an explanation of benefits, the explanation of benefits speaks for itself and Defendants deny any allegations contrary to or inconsistent with the text. Defendants admit that the words used in the two explanation of benefit

documents are not the same but otherwise deny the last sentence of paragraph 6.11. Defendants are without knowledge or information sufficient to form a belief as to the truth of any remaining allegations set forth in paragraph 6.11 of the First Amended Complaint.

6.12    Neither coverage for ASD or ABA therapy are addressed in the section of the Plan entitled "General Limitations and Exclusions." *See* Appendix F at 44.

**ANSWER**:  The Plan speaks for itself and Defendants deny any allegations contrary to or inconsistent with the text. Defendants admit that the words "ASD or ABA therapy" are not included in the "General Limitations and Exclusions" section of the Plan, but otherwise deny the remaining allegations in paragraph 6.12 of the First Amended Complaint.

6.13    Instead, in section entitled "Exclusions" under the section Medical Benefits, the Plan states: "Some healthcare services not covered by the Plan." In a further subsection entitled "Behavioral Health," the plan lists as excluded: "Charges for services, supplies, or treatment for Autism, Asperger's and Pervasive Developmental Disorders" and "Charges for Applied Behavior Analysis (ABA Therapy)." *Id.* at 104. (Hereinafter, collectively, the "Behavioral Health Exclusion").

**ANSWER**:  The Plan speaks for itself and Defendants deny any allegations contrary to or inconsistent with the text. To the extent plaintiffs quote the plan correctly and in its appropriate context, Defendants admit the allegations set forth in paragraph 6.13 of the First Amended Complaint. Defendants deny any remaining factual allegations set forth in paragraph 6.13 of the First Amended Complaint.

6.14    In August 2019, T.S.'s mother appealed the benefits determinations to Cypress under the terms of the Plan. *See* Appendix G.

**ANSWER**: Defendants admit the allegations set forth in paragraph 6.14 of the First Amended Complaint.

6.15 The Plan provides that appeals will be resolved within 30 days. Appendix F at 56.

**ANSWER**: Defendants deny the allegations set forth in paragraph 6.15 of the First Amended Complaint.

6.16 *The Plan did not respond to T.S.'s appeal for seven (7) months.* On March 31, 2020, Lucent Health Solutions, sent T.S.'s counsel a letter stating that the claims were correctly denied because they are not covered under the terms of the Plan. *See* Appendix H.

**ANSWER**: Defendants state that the March 31, 2020 letter from Lucent Health Solutions speaks for itself. Defendants admit the remaining allegations set forth in paragraph 6.16 of the First Amended Complaint to the extent they are not inconsistent with or contrary to that letter.

6.17 T.S. has exhausted his administrative remedies.

**ANSWER**: Defendants admit the allegations set forth in paragraph 6.17 of the First Amended Complaint.

6.18 T.S. requires ABA services to treat his ASD, a developmental mental health conditions.

**ANSWER**: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 6.18 of the First Amended Complaint.

6.19 T.S. did not receive ABA therapy from February 2019 through March 2020 because his parents could not afford to pay for the therapy without insurance.

**ANSWER**: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 6.19 of the First Amended Complaint.

6.20    ABA services are outpatient "mental health services" under the terms of the Plan and state and federal law. *See* 29 U.S.C. § 1185a(e)(4).

**ANSWER**:    Defendants deny the allegations set forth in paragraph 6.20 of the First Amended Complaint.

6.21    The Plan, however, had denied all coverage of ABA therapy to treat ASD.

**ANSWER**:    Defendants admit the allegations set forth in paragraph 6.21 of the First Amended Complaint, except that it denies any suggestion by way of the "however" that Defendants in some way violated any terms of the Plan or the law.

6.22    The Plan's exclusion of all coverage for ABA therapy to treat ASD violates the Mental Health Parity Act, both facially and as applied.

**ANSWER**:    Defendants deny the allegations set forth in paragraph 6.22 of the First Amended Complaint.

6.23    *Facially,* the Plan violates the Parity Act by applying a separate exclusion of all coverage of "behavioral health" services to treat ASD. 29 U.S.C. § 1185a(a)(3)(A)(ii). On its face, the Plan excludes only mental health services to treat ASD.

**ANSWER**:    Defendants deny the allegations set forth in paragraph 6.23 of the First Amended Complaint.

6.24    According to the literal terms of the Plan, this exclusion is not a "permanent exclusion of all coverage" for a particular condition. *See* 29 C.F.R. § 2590.712(c)(2)(i).

**ANSWER**:    Defendants deny the allegations set forth in paragraph 6.24 of the First Amended Complaint.

6.25    The Plan covers various medical/surgical services to treat ASD, including development delay and ASD screening/diagnostic services, prescription drugs, and pediatric visits.

14

**ANSWER**:  The Plan speaks for itself and Defendants deny any allegations contrary to or inconsistent with the text. Defendants further deny the allegations in paragraph 6.25 of the First Amended Complaint.

6.26    Specifically, the Plan covers the two prescription medications approved by the FDA to treat ASD, Risperadal and Abilify, without any limitations based on diagnosis. *See* Appendices I, J, K.

**ANSWER**: The Plan speaks for itself and Defendants deny any allegations contrary to or inconsistent with the text. Defendants further deny the allegations in paragraph 6.26 of the First Amended Complaint.

6.27.    The Plan also violates the Parity Act *as applied*. Based on T.S.'s administrative record and the plan documents, the Plan only excludes ABA therapy to treat ASD while generally covering all outpatient medical/surgical services. As such, the exclusion is a "separate treatment limitation … that [is] applicable only with respect to mental health or substance use disorder benefits." 29 U.S.C. § 1185a(a)(3)(A)(ii).

**ANSWER**:  Defendants deny the allegations set forth in paragraph 6.27 of the First Amended Complaint.

6.28    Alternatively, the Plan does not apply its exclusion of ABA therapy to treat ASD "at parity" with its coverage of all outpatient medical/surgical services. *Id.* The Plan's decision to impose an ABA therapy exclusion – without evaluating the service for efficacy, medical necessity, or whether it is "experimental/investigational" – was not "at parity" with its processes and procedures for determining the exclusion of other medical/surgical services. Based on information and belief, when medical/surgical services are excluded by the Plan, the exclusion is imposed

15

because the services are deemed experimental/investigational, not medically necessary, or less effective than other less costly alternatives.

**ANSWER**:   Defendants deny the allegations set forth in paragraph 6.28 of the First Amended Complaint.

6.29    In Defendants' Motion for Judgment on the Pleadings, they argued that the Behavioral Health Exclusion is not only applied to mental health services. Instead, they argued that it "categorically excludes" all coverage for "services, supplies or treatment for Autism, Asperger's and Pervasive Developmental Disorders" including ABA therapy for ASD. *See* Dkt. No. 23, p.1.

**ANSWER:**  Defendants state that their motion for judgment on the pleadings speaks for itself and deny Plaintiffs' characterization of the argument set forth on pages 1 and 2 of their brief.

6.30    If Defendants designed and administered the Behavioral Health Exclusion as a categorical exclusion of all coverage for ASD, Asperger's and pervasive developmental disorders, Defendant CarDon violated Section 1557 of the ACA, by discriminating on the basis of disability against T.S.

**ANSWER:**  Defendants deny the allegations set forth in paragraph 6.30 of the First Amended Complaint.

6.31    Based upon information and belief, all or virtually all enrollees in the Plan, designed and sponsored by CarDon, who seek coverage for "services, supplies or treatment" for ASD, Asperger's and pervasive developmental disorders, and/or ABA therapy to treat their ASD are "qualified individuals with disabilities" under Section 1557 and Section 504.

**ANSWER:**  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 6.31 of the First Amended Complaint.

16

6.32    Based on information and belief, few if any non-disabled enrollees had claims denied by Defendants under the Behavioral Health Exclusion.

**ANSWER:**  Defendants deny the allegations set forth in paragraph 6.32 of the First Amended Complaint.

## VII. COUNT I

**Claim for recovery of benefits, clarification of rights under the terms of the Plan, and clarification of right to future benefits under the Plan ERISA § 502(a)(1)(B), 29 U.S.C § 1132(a)(1)(B)**

7.1    T.S. re-alleges all the paragraphs above.

**ANSWER**:  Defendants incorporate by reference their answers to all the paragraphs above.

7.2    ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides that a participant or beneficiary may bring an action to "recover benefits due to him under the terms of his plan, to enforce rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

**ANSWER**:  Paragraph 7.2 states legal conclusions to which no response is required.  To the extent a response is required, Defendants deny any factual allegations in paragraph 7.2 of the First Amended Complaint and further deny that Plaintiffs are entitled to the relief sought.

7.3    The terms of an ERISA plan include non-preempted provisions of substantive law, such as the requirements of the Federal Parity Act. The Plan has failed to comply with the terms of the Plan, which include the requirements of the Federal Parity Act and its implementing regulations.

**ANSWER**:  Paragraph 7.3 states legal conclusions to which no response is required.  To the extent a response is required, Defendants deny any factual allegations in paragraph 7.3 of the First Amended Complaint and further deny that the Plan failed to comply with its own terms, including the requirements of the Federal Parity Act and its implementing regulations.

7.4    Federal Parity Act permits plans to exclude all coverage for certain conditions. But because the Plan's ASD-related exclusions are only exclusions for "Behavioral Health" related to ASD, they are not a complete exclusion for all care related ASD and are therefore impermissible under the Federal Parity Act.

**ANSWER**: Paragraph 7.4 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny any factual allegations in paragraph 7.4 of the First Amended Complaint and further deny that the Plan's exclusions are impermissible under the Federal Parity Act.

7.5    T.S. is entitled to recover benefits due to him under the terms of the Plan. He is entitled to a declaration of present and future rights to coverage of ABA services and other medically necessary mental health treatments to treat his ASD.

**ANSWER**: Defendants deny the allegations set forth in paragraph 7.5 of the First Amended Complaint.

## VIII. COUNT II

**Claim to enjoin acts and practices in violation of the terms of the Plan, to obtain other equitable relief, and to enforce the terms of the Plan**
**ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)**

8.1    T.S. re-alleges all the paragraphs above.

**ANSWER**: Defendants incorporate by reference their answers to all the paragraphs above.

8.2    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), provides that a participant or beneficiary may "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan." T.S. seeks to enjoin Defendants from continuing to apply exclusions and limitations on all coverage of ABA therapy to treat qualified mental health conditions. T.S. also

seeks corrective notice and reformation of the relevant Plan documents, consistent with the requirements of the Mental Health Parity Act.

**ANSWER**:  The first sentence of paragraph 8.2 states a legal conclusion to which no response is required. The last two sentences of paragraph 8.2 are Plaintiffs' statement of intent, not factual allegations, to which no response is required. To the extent a response is required, Defendants deny any factual allegations in paragraph 8.2 of the First Amended Complaint.

8.3     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), further provides that a participant or beneficiary may obtain other appropriate equitable relief to redress violations of ERISA or enforce Plan terms. To the extent full relief is not available under ERISA § 502(a)(1)(b), 29 U.S.C. § 1132(a)(1)(B), then T.S. seeks equitable remedies including, without limitation, unjust enrichment, disgorgement, restitution, surcharge and consequential damages arising out of the Defendants' failure to administer the terms of the Plan as modified by the Parity Act and implementing regulations.

**ANSWER**:  The first sentence of paragraph 8.3 states a legal conclusion to which no response is required. The last sentence of paragraph 8.3 is Plaintiffs' statement of intent, not factual allegations, to which no response is required. To the extent a response is required, Defendants deny any factual allegations in paragraph 8.3 of the First Amended Complaint.

### IX. COUNT III

**In the Alternative, Claim for Violation of the Affordable Care Act, 42 U.S.C. § 18116**

9.1     T.S. re-alleges all paragraphs above.

**ANSWER:**  Defendants incorporate by reference their answers to all the paragraphs above.

9.2     42 U.S. § 18116(a), provides that "an individual shall not, on the ground prohibited under . . . [29 U.S.C. § 794], be excluded from participation in, denied the benefits of, or be

19

subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."

**ANSWER:** Paragraph 9.2 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny any factual allegations in paragraph 9.2 of the First Amended Complaint.

9.3    CarDon is a health program or activity a part of which receives federal financial assistance and is therefore a covered entity for the purposes of 42 U.S.C. § 18116(a).

**ANSWER:** Defendants deny the allegations set forth in paragraph 9.3 of the First Amended Complaint.

9.4    T.S. is a "qualified individual with a disability" under the Rehabilitation Act of 1973 because T.S. has a mental impairment, ASD, that substantially limits one or more of T.S.'s major life activities, including without limitation, performing manual tasks, walking, speaking, learning, concentrating, thinking, and communicating. *See* 29 U.S.C. § 705(20)(B).

**ANSWER:** Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 9.4 of the First Amended Complaint.

9.5    CarDon violates the ACA by discriminating against T.S. on the basis of his disability on its employee health benefit program in at least three ways. First, CarDon designed and caused the Plan to administer the Behavioral Health Exclusion, which it asserts is a categorical exclusion of all coverage for ASD to deny claims for medically necessary treatment. According to CarDon, under the exclusion, only people with ASD, Asperger's, or other pervasive developmental disorders, each qualifying disabilities, are excluded from the benefits that they require to treat their disabilities. This is a form of intentional, facial discrimination.

**ANSWER:**   Defendants admit that CarDon designed the Plan. Defendants deny the remaining allegations set forth in paragraph 9.5 of the First Amended Complaint.

9.6      Second, to the extent CarDon claims that not all people with ASD, Asperger's or other pervasive developmental disorders are "qualified individuals with disabilities," such that the Behavioral Health Exclusion applies to disabled and non-disabled enrollees alike, the categorical exclusion is a "proxy" for people with disabling ASD, Asperger's or other pervasive developmental disorders. *See McWright v. Alexander,* 982 F.2d 222, 228 (7th Cir. 1992). Under the proxy analysis, the Behavioral Health Exclusion is also a form of intentional discrimination.

**ANSWER:**   Defendants deny the allegations set forth in paragraph 9.6 of the First Amended Complaint.

9.7      Third, CarDon separately excludes all coverage for ABA therapy-a treatment that, in the vast majority of cases, is used to treat autism. This policy, though seemingly neutral, excludes coverage for services that are closely associated with autism that the exclusion effectively discriminates on the basis of T.S.'s disability. Thus, it is also a form of intentional "proxy discrimination." *See id.*

**ANSWER:**   Defendants deny the allegations set forth in paragraph 9.7 of the First Amended Complaint.

9.8      By excluding benefits for all health care related to ASD, Asperger's and pervasive developmental disorders, and for ABA Therapy specifically, CarDon has intentionally discriminated, and continues to discriminate, on the basis of disability against T.S. and others like him. *See Schmitt v. Kaiser Foundation Health Plan of Washington,* 965 F.3d 945 (9th Cir. 2020). CarDon has already advised the Court that it intentionally designed the Plan to exclude all such coverage in Defendants' motion for judgment on the pleadings in this matter. Filing No. 23.

**ANSWER:** Defendants deny the allegations set forth in paragraph 9.8 of the First Amended Complaint.

## X.  PRAYER FOR RELIEF

A.      Declare that the Plan may not apply contract provisions, policies, or practices that wholly exclude or impermissibly limit ABA services to treat ASD and developmental mental health conditions, given that such exclusions or limitations are not predominately applied to medical and surgical services;

B.      Enjoin the Plan from further violations of the terms of the Plan as modified by the Federal Parity Act and implementing regulations;

C.      Award T.S. the value of the ABA therapy services he missed between February 2019 and March 2020 as a result of the Plan's failure to cover the services.

D.      Award T.S. damages in an amount to be proven at trial due to Defendant CarDon's violation of 42 U.S.C. §18116(a);

E.      Enjoin Defendant CarDon and its agent Lucent from designing, administering, or applying the Behavioral Health Exclusion and/or other similar violations of the Affordable Care Act, now and in the future;

F.      Award T.S. his attorneys' fees and costs under ERISA § 502(g), 29 U.S.C. § 1132(g) and 42 U.S.C. § 1988; and

G.      Award such other relief as is just and proper.

**ANSWER**:  As for Plaintiffs' prayer for relief, Defendants deny all allegations therein and further state that Plaintiffs are not entitled to any remedy or relief whatsoever.

## UNANSWERED ALLEGATIONS

Each and every allegation contained in the First Amended Complaint which is not specifically admitted or denied above is generally denied.

## ADDITIONAL DEFENSES

1.      The First Amended Complaint fails to state a claim upon which relief can be granted.

2.      Plaintiffs' claims are barred because Defendants acted in accordance with the terms of the Plan documents and ERISA.

3.      Plaintiffs' request for equitable relief in Count II is based on the same facts as the request for relief in Count I. Consequently, Plaintiffs are not entitled to relief under Count II.

4.      Plaintiffs failed to exhaust any applicable administrative prerequisites to bringing the claim set forth in Count III of the Amended Complaint.

5.      Plaintiffs' claims in the First Amended Complaint are barred in whole or in party by the applicable statute of limitations.

6.      Plaintiffs' claims for damages are barred to the extent those claims seek damages not available under the underlying statutes.

7.      Plaintiffs' claim under the Affordable Care Act fails because to the extent CarDon is the recipient of federal funds, those are not for purposes of employment, which defeats any claim, like the Affordable Care Act claim, that is based on the Rehabilitation Act.

8.      Because T.S. is not an intended beneficiary of any program for which CarDon receives federal funding, T.S. cannot bring a private right of action under Section 1557 of the Affordable Care Act to the extent the Affordable Care Act incorporates the Rehabilitation Act and T.S. lacks standing to bring a claim under Section 1557 of the Affordable Care Act.

9.      Upon information and belief, Plaintiffs have failed to mitigate their damages.

23

WHEREFORE, Defendants, by counsel, respectfully request that the Court enter judgment in their favor and against Plaintiffs on their First Amended Complaint; that Plaintiffs take nothing by way of their First Amended Complaint; that the Court award Defendants their reasonable costs, including attorneys' fees, incurred in defending this action; and that the Court award all other appropriate relief.

Respectfully submitted,

*/s/Andrew M. McNeil*
Andrew M. McNeil (#19140-49)
Mark A. Wohlford (#31568-03)
W. James Hamilton (#20155-49)


BOSE McKINNEY & EVANS LLP

111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5000; (317) 684-5173 (Fax)
amcneil@boselaw.com
mwohlford@boselaw.com
jhamilton@boselaw.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2020, a copy of the foregoing "Answer to First Amended Complaint" was filed electronically. Notice of this filing will be sent to the following counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

| | |
|---|---|
| Syed Ali Saeed, Esq.<br>Saeed & Little, LLP<br>18 West Vermont Street<br>Indianapolis, IN  46204<br>ali@sllawfirm.com | Toby J. Marshall, Esq.<br>Blythe H. Chandler, Esq.<br>Elizabeth A. Adams, Esq.<br>Terrell Marshall Law Group PLLC936<br>North 34th Street, Suite 300<br>Seattle, WA  98103-8869<br>tmarshall@terrellmarshall.com<br>bchandler@terrellmarshall.com<br>eadams@terrellmarshall.com |
| Eleanor Hamburger, Esq.<br>Sirianni Youtz Spoonemore Hamburger PLLC<br>3101 Western Avenue, Suite 350<br>Seattle, WA  98121<br>ehamburger@sylaw.com | |

*/s/Andrew M. McNeil*
Andrew M. McNeil

3930104