**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| T.S., by and through his parents and guardians, T.M.S. and M.S., individually and derivatively on behalf of the Heart of CarDon, LLC Employee Benefit Plan,<br><br>Plaintiff,<br><br>vs.<br><br>HEART OF CARDON, LLC, and HEART OF CARDON, LLC EMPLOYEE BENEFIT PLAN,<br><br>Defendants. | NO. 1:20-cv-01699-TWP-TAB |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'**
**SECOND MOTION FOR JUDGMENT ON THE PLEADINGS**

**Table of Contents**

I.   INTRODUCTION ................................................................................................. 1

II.  FACTS .............................................................................................................. 2

   A.  CarDon is a "Covered Entity" Under Section 1557............................................ 2

   B.  T.S. Is a Beneficiary of the Plan Designed by CarDon....................................... 4

   C.  For This Responsive Brief Only, Plaintiff Assumes But Does Not Concede, That the
      Exclusion Is a Categorical Exclusion of all Coverage for ASD. ........................... 5

III. ARGUMENT...................................................................................................... 6

   A.  Legal Standard ................................................................................................ 6

   B.  Background on the Affordable Care Act............................................................. 6

   C.  Plaintiff Adequately Alleged an Alternative Claim Under Section 1557. ........... 10

   D.  Plaintiff May Pursue a Section 1557 Claim Against Defendant CarDon. ........... 10

      1.  Section 1557 Incorporates Only the Grounds and Enforcement
         Mechanisms of Section 504. ...................................................................... 12

      2.  Seventh Circuit Caselaw on RA § 504 Does Not Require Plaintiff T.S.
         To Be an "Intended Beneficiary."............................................................... 13

      3.  Title VI's Limitations and Purpose Do Not Apply to Section 1557........... 14

      4.  Federal Regulators Agree that Covered Entities Like CarDon are
         Subject to Section 1557 in all Activities. .................................................. 16

IV.  CONCLUSION .................................................................................................. 18

## Table of Authorities

### Cases

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)..................................................................................... 6

*Bissada v. Ark. Children's Hosp.,*
   2009 U.S. Dist. LEXIS 31831 (E.D. Ark. April 14, 2009)............................ 19

*Boyden v. Conlin,*
   341 F. Supp. 3d 979 (W.D. Wis. 2018) ................................................ 10, 12

*Briscoe v. Health Care Serv. Corp.,*
   281 F. Supp. 3d 725 (N.D. Ill. 2017) ................................................... 10, 12

*Buchanan-Moore v. Cty. of Milwaukee,*
   570 F.3d 824 (7th Cir. 2009) ........................................................................ 6

*Burks v. Wis. DOT,*
   464 F.3d 744 (7th Cir. 2006) ...................................................................... 11

*Callum v. CVS Health Corp.,*
   137 F. Supp. 3d 817 (D.S.C. 2015)............................................... 10, 11, 12

*Consol. Rail Corp. ("CONRAIL") v. Darrone,*
   465 U.S. 624, 104 S. Ct. 1248, 79 L. Ed. 2d 568 (1984)................. 16, 17, 18

*Doe v. BlueCross BlueShield of Tenn., Inc.,*
   926 F.3d 235 (6th Cir. 2019) ....................................................................... 9

*Doe v. St. Joseph's Hosp. of Fort Wayne,*
   788 F.2d 411 (7th Cir. 1986) ...................................................................... 19

*Doe v. Woodridge Elem. Sch. Dist. No. 68 Bd. of Educ.,*
   2005 U.S. Dist. LEXIS 7023 (N.D. Ill. Apr. 13, 2005) ................................ 19

*Esparza v. Univ. Med. Ctr. Mgmt. Corp.,*
   2017 U.S. Dist. LEXIS 142944 (E.D. La. Sep. 5, 2017) ............................ 11

*Flack v. Wis. Dept. of Health Servs.,*
   328 F. Supp. 3d 931 (W.D. Wis. 2018) ...................................................... 10

*Foss v. Chicago,*
   817 F.2d 34 (7th Cir. 1987) ................................................................. 16, 18

*Huffman v. Univ. Med. Ctr. Mgmt. Corp.,*
   2017 U.S. Dist. LEXIS 180999 (E.D. La. Oct. 31, 2017) ........................... 14

*King v. Burwell,*
   576 U.S. 473 (2015)................................................................................... 14

*Kleber v. CareFusion Corp.,*
   914 F.3d 480 (7th Cir. 2019) ...................................................................... 14

*Massey v. Churchview Supportive Living, Inc.*,
  2018 U.S. Dist. LEXIS 27156 (N.D. Ill. Feb. 21, 2018) ...................................... 11, 15, 16, 17, 18

*Micek v. City of Chi.*,
  1999 U.S. Dist. LEXIS 16263 (N.D. Ill. Sep. 30, 1999) ..................................................... 7

*Mullen v. S. Denver Rehab., LLC*,
  2020 U.S. Dist. LEXIS 88638 (D. Colo. May 20, 2020) ......................................................... 10

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
  567 U.S. 519 (2012) ......................................................................................... 7

*Parks v. Speedy Title & Appraisal Review Servs.*,
  318 F. Supp. 3d 1053 (N.D. Ill. 2018) ..................................................................... 19

*Pisciotta v. Old Nat. Bancorp*,
  499 F.3d 629 (7th Cir. 2007) ............................................................................... 6

*Rose v. Cahee*,
  727 F. Supp. 2d 728 (E.D. Wis. 2010) ..................................................................... 16

*Ruffin v. Rockford Mem'l Hosp.*,
  181 F. App'x 582 (7th Cir. 2006) ......................................................................... 16

*Rumble v. Fairview Health Servs.*,
  2015 U.S. Dist. LEXIS 31591 (D. Minn. Mar. 16, 2015) ..................................................... 13

*Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*,
  786 F.3d 510 (7th Cir. 2015) .............................................................................. 16

*Schmitt v. Kaiser Found. Health Plan of Wash.*,
  965 F.3d 945 (9th Cir. 2020) ..................................................................... 7, 9, 10, 13

*Shebley v. United Cont'l Holdings, Inc.*,
  357 F. Supp. 3d 684 (N.D. Ill. 2019) ................................................................. 18, 19

*Simpson v. Reynolds Metals Co.*,
  629 F.2d 1226 (7th Cir. 1980) ......................................................................... 17, 18

*Vuciecevic v. MacNeal Mem'l Hosp.*,
  572 F. Supp. 1424 (N.D. Ill. 1983) ....................................................................... 19

*York v. Wellmark, Inc.*,
  2017 U.S. Dist. LEXIS 199888 (S.D. Iowa Sep. 6, 2017) ..................................................... 14

**Statutes**

29 U.S.C. § 1002(16)(B)(i) ..................................................................................... 3

29 U.S.C. § 705(20)(B) ..................................................................................... 4, 11

29 U.S.C. § 794 ............................................................................................... 1

29 U.S.C. § 794(b)(1)(B) ..................................................................................... 18

42 U.S.C. § 18022(b)(1)(E) ................................................................................... 15

42 U.S.C. § 18022(b)(4)(B) ................................................................................................ 14

42 U.S.C. § 18116(a) ...............................................................................2, 7, 8, 11, 14, 15, 18

42 U.S.C. § 300gg-11 ........................................................................................................ 15

42 U.S.C. § 300gg-6 .......................................................................................................... 14

## Regulations

45 C.F.R. § 92.207(b)(2) ...................................................................................................... 8

## Rules

Fed. R. Civ. P. 15(a)(2) ....................................................................................................... 16

## Other Authorities

81 Fed. Reg. 31,472............................................................................................................. 4

85 Fed. Reg. 37,171..................................................................................................... 13, 19

85 Fed. Reg. 37,173........................................................................................................... 20

85 Fed. Reg. 37,177....................................................................................................... 8, 20

## I.   INTRODUCTION

Defendant Heart of Cardon LLC ("CarDon") argues that it is free to discriminate against participants and beneficiaries with Autism Spectrum Disorder ("ASD") enrolled in the Heart of CarDon LLC Employee Benefit Plan ("Plan") by designing plan benefits to exclude all coverage for ASD.  Before the passage of the Affordable Care Act ("ACA"), that may have been true. Since the ACA was enacted, however, it is illegal for CarDon to engage in such disability discrimination.

The ACA provided ground-breaking, comprehensive health care reform aimed at ensuring that all Americans, including those with disabilities such as ASD, have access to quality, affordable health coverage.  Congress put in place layered protections which ensure that people with disabilities, too often excluded from health benefits in the past, would finally be able to obtain coverage for their health conditions.  Congress eliminated the use of pre-existing condition limitations, ended lifetime and annual caps on coverage, required health plans to take all applicants regardless of their health conditions, guaranteed renewability of that coverage, and established ten broad categories of required benefits, among other consumer protections.  But the ACA did more than just expand *access* to health coverage.  Section 1557, the ACA's anti-discrimination law, ensured that people with disabilities would have coverage for their conditions without discrimination.  For the very first time, Congress extended anti-discrimination law to health benefits designed and provided by covered entities like CarDon:

> [A]n individual shall not, **on the ground** prohibited under … **section 504** of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance***….***

42 U.S.C. § 18116(a) (emphasis added).  After the ACA, CarDon may not design and direct its

health plan to administer a categorical exclusion of coverage based on a disabling condition like

ASD.  CarDon's ongoing efforts to impose a blanket exclusion of all coverage for ASD violate

Section 1557.

CarDon's arguments are built on the flawed premise that the ACA's prohibition on

discriminatory benefits design may only be enforced by direct recipients of Federal financial

assistance. But no Court in this Circuit or across the country has so held. CarDon fails to cite a

single case applying its "intended beneficiary" rule to limit a plaintiff's ability to sue a covered

entity under Section 1557.  Simply put, Congress intended to expand coverage to disabled

individuals by barring discrimination in benefit design under Section 1557.  CarDon's Second

Motion to Dismiss should be denied in full.

## II.   FACTS

The facts of this case have been extensively briefed in Plaintiff's response to defendants'

first motion for judgment on the pleadings and are incorporated herein.  For this motion,

Plaintiff has alleged all of the facts necessary for relief under Section 1557:

### A.    CarDon is a "Covered Entity" Under Section 1557.

CarDon is engaged in the business of providing healthcare and receives federal financial

assistance in the form of Medicaid and Medicare Payments. Dkt. No. 31, ¶¶ 1.3, 4.4., 9.3; *see*

Dkt. No. 31-1, *Appendix F*, p. 35 of 164; *see also* Dkt. No. 34 at 7–8 (admitting that CarDon "is

principally engaged in the business of providing healthcare and receives Medicaid and Medicare

payments" as alleged in ¶ 4.4 of Plaintiff's First Amended Complaint).   As part of its business

activities, CarDon is the "Plan Sponsor" of a health benefit plan that provides health benefits to

CarDon's nursing home employees and their dependents, including T.S.  Dkt. No. 31*., ¶¶* 1.1-

1.4.  The term "Plan Sponsor" is defined as an employer who established and maintained an

employee benefit plan for its employees and dependents.  *See* 29 U.S.C. § 1002(16)(B)(i).

CarDon does not offer a "contract of insurance" or health ***insurance*** benefits to its employees.

Instead, it designed and offered a self-funded health benefit plan, meaning that CarDon

designed the plan and pays for all of the health services that are covered out of the company's

general assets.  *See* Dkt. No. 31-1, *Appendix F,* p. 38, 40 of 164.  The Plan's third-party

administrator, currently Lucent, does not assume any financial risk or obligation related to

employee health care claims – only CarDon does.  *See* Dkt. No. 31-1, *Appendix F,* at 61, 82, 85 of

164.[1]  CarDon, as the drafter, designer and funder of the Plan, promised to comply with all

applicable laws, and agreed that if any of the Plan's terms violate applicable law, the specific

Plan term would be void:

> Any provision of this Plan that is contrary to any applicable law, equitable
> principle, regulation or court order…. will be interpreted to comply with said law,
> or if it cannot be so interpreted, shall be automatically amended to satisfy the
> law's minimum requirement, including, but not limited to, state maximums,
> Exclusions or statutes of limitation.  It is intended that the Plan will conform to
> the requirements of ERISA as it applies to Employee welfare plans, as well as any
> other applicable law.

*Id.,* p. 107 of 164.  CarDon specifically promised to comply with both the Federal Mental Health

Parity Act and the Affordable Care Act's non-discrimination provisions.  *See id.,* at 39-40 of 164.

The Plan includes a "Notice of Nondiscrimination."  Dkt. No. 31-1, at 162 of 164. The notice

states:

---

[1] Unless otherwise noted, citations are to the page numbers assigned by the Court's ECF system.

> Heart of CarDon, LLC Employee Benefit Plan complies with applicable Federal civil rights laws and does not discriminate on the basis of race, color, national origin, age, disability or sex.  Heart of CarDon, LLC Employee Benefit Plan does not exclude people or treat them differently because of race, color, national origin, age, disability or sex.

*Id.*  This is the type of notice required under Section 1557 (through August 18, 2020) to be provided by covered entities to affected individuals.  *See* 81 Fed. Reg. 31,472, Appendix A to Part 92.

**B.**     **T.S. Is a Beneficiary of the Plan Designed by CarDon.**

T.S. is a beneficiary enrolled in the Heart of CarDon, LLC Employee Benefit Plan.  Dkt. No. 31, ¶ 1.1; *see* Dkt. No. 1-1, *Appendix F* (the "Plan").   He is enrolled through his mother, T.M.S., who works for CarDon.  Dkt. No. 31, ¶ 1.1.  Plaintiff T.S. is diagnosed with ASD and is a "qualified individual with a disability" pursuant to Section 504 of the Rehabilitation Act ("RA § 504").  *Id.,* ¶¶ 6.1-6.3; *see* 29 U.S.C. § 705(20)(B).

In 2018, T.S.'s treating provider recommended that T.S. receive ABA therapy to treat his ASD.  Dkt. No. 31, ¶ 6.4.  T.S. began receiving ABA therapy, which was pre-authorized for coverage by CarDon's Plan.  *Id.,* ¶¶ 6.5-6.7.

In March of 2019, CarDon's third-party administrator denied coverage for T.S.'s ABA therapy services.  *Id.,* ¶ 6.9, *Appendix D*.  At first, the only reason given was "insurance update needed from member."  *Id.,* ¶ 6.10.  Three months later, a new explanation of benefits was provided, denying ABA again, but referencing the "General Exclusions" in the Plan.  *Id.,* ¶ 6.11, *Appendix E.*  There is no exclusion for either ABA therapy or ASD services in the General Exclusions section of the Plan.  *Id.,* ¶ 6.12, *Appendix F,* p. 44.

T.S.'s mother appealed the denial in August 2019, but none of defendants nor the TPA responded within the 30 days required under the plan. *Id.,* ¶¶ 6.14-6.16. Defendants only responded seven months later, in a letter addressed to T.S.'s counsel after receiving a pre-litigation demand letter. *Id., Appendix H.* The final denial identifies two exclusions as the basis for the denial, one for ABA therapy and a second for "services, supplies or treatment for Autism," both of which are described as "Behavioral Health Exclusions" in the Plan. *Id., Appendix F,* p. 104. But for Defendants' application of the Behavioral Health Exclusion, T.S.'s ABA therapy to treat his ASD would be covered as medically necessary outpatient mental health services. *Id.,* ¶ 6.20.

**C.      For This Responsive Brief Only, Plaintiff Assumes But Does Not Concede, That the Exclusion Is a Categorical Exclusion of all Coverage for ASD.**

Plaintiff alleges in his Complaint, and this Court must consider as true, that Defendants administer the "Behavioral Health Exclusion" in the Plan as a special mental health-only exclusion of ABA therapy services to treat ASD. *Id.,* ¶¶ 6.13, 6.23-6.28. Plaintiff alleges that the Plan does ***not*** administer the Behavioral Health Exclusion as a complete exclusion of all coverage for ASD. *Id.* Plaintiff alleged multiple instances in which Defendants, both on the plain terms of the Plan and as applied, cover services and treatment for ASD. *Id.*

Nonetheless, Defendants insist that the Plan applies the Behavioral Health Exclusion as a categorical exclusion of all coverage for ASD. *Id.,* ¶ 6.29; Dkt. No. 23, p.1. Defendants argued that they may exclude all coverage for ASD, a disabling condition, with impunity. *Id.* Based upon Defendants litigation-driven arguments, Plaintiffs amended their complaint to provide an alternative claim pursuant to the Affordable Care Act's Section 1557. Dkt. No. 31, ¶¶ 6.30-6.32; 9.1-9.8. Defendants' second motion for judgment on the pleadings addresses this alternative

claim, only.  *See* Dkt. No. 37.  This alternative claim is only reached if Defendants are successful

in demonstrating that the Behavioral Health Exclusion is, both facially and as applied, a

categorical exclusion of all coverage for ASD.  For the remainder of this Motion, Plaintiff

assumes but does not concede that the Behavioral Health Exclusion is a categorical exclusion of

all coverage for ASD.

### III.   ARGUMENT

**A.**   **Legal Standard**

This Court must consider the facts in the light most favorable to the Plaintiff, the non-

moving party, when deciding a Motion on the Pleadings.  *See Pisciotta v. Old Nat. Bancorp*, 499

F.3d 629, 633 (7th Cir. 2007). Courts must deny the motion unless if it appears beyond doubt

that the plaintiff cannot prove any facts that would support his or her claim for relief.

*Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Thus, as with a

12(b)(6) motion, to survive a Rule 12(c) motion, the plaintiff need only point to factual

allegations that state a claim for relief that is plausible on its face. *See Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007).

**B.**   **Background on the Affordable Care Act.**

The ACA marked a revolutionary change in how health benefits are designed and

administered.  Before the ACA, employers and insurance companies could freely discriminate

against disabled enrollees, women, and others, at least in the design of health benefits. *See

Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 948 (9th Cir. 2020) ("Prior to the

ACA's enactment, an insurer could generally design plans to offer or exclude benefits as it saw

fit without violating federal antidiscrimination law."); *see e.g., Micek v. City of Chi.*, 1999 U.S.

Dist. LEXIS 16263, at *22 (N.D. Ill. Sep. 30, 1999) (Neither Rehabilitation Act § 504 nor the ADA regulate the discriminatory content of an employee's health benefit package).

 With the ACA, Congress, explicitly and for the first time, prohibited discrimination in "health programs or activities," any part of which receive federal financial assistance.  42 U.S.C. § 18116(a) (referred to as "Section 1557").  Additionally, Congress included "contracts of insurance" in the definition of federal financial assistance.  *Id.*  Under the plain language of Section 1557, any health program that receives any federal financial assistance, is subject to the full scope of the law.

 Congress passed the ACA to ensure that all Americans, including those with disabilities, have access to comprehensive health coverage.  *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012) (The ACA was intended "to increase the number of Americans covered by health insurance and decrease the cost of health care").  In order to ensure comprehensive coverage for all Americans, the ACA eliminated pre-existing condition exclusions, medical underwriting, and discriminatory benefit design – which  employers and health insurers had used to avoid covering individuals with disabilities and chronic health conditions.

 To expand anti-discrimination law into the new arena of health benefit plans, Congress incorporated only the "grounds" and "enforcement mechanisms" of Section 504 of the Rehabilitation Act ("RA § 504"), into Section 1557.  42 U.S.C. § 18116(a).  Consistent with that approach, the federal Department of Health and Human Services ("DHHS") determined that Section 1557 prohibits disability discrimination in how ACA-regulated entities design and administer health benefits.  45 C.F.R. § 92.207(b)(2) (effective through August 18, 2020) ("***A covered entity shall not***, in providing or administering health-related insurance or other health

related coverage … **have benefit designs that discriminate on the basis of** … **disability**.")[2] (emphasis added).  While a new rule effective as of August 18, 2020 does not specifically address benefit design discrimination, the related federal guidance indicates that such discrimination remains illegal when conducted by "covered entities."  *See* 85 Fed. Reg. 37,177 ("The Department will enforce vigorously Section 1557's prohibition on discrimination on the basis of disability against all covered entities, including when discrimination is alleged to have taken place in **benefit design**.") (emphasis added).

The Ninth Circuit recently addressed how courts should analyze claims of "benefit design" discrimination.  *See Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F. 3d 945 (9th Cir. 2020).[3]  In that case, a health insurer applied a blanket exclusion of all coverage for treatment for hearing loss, except for cochlear implants.  *Id.* at 949.  The plaintiffs, both disabled individuals who use hearing aids, sued, alleging intentional disability discrimination under Section 1557.  *Id.*  The trial court concluded that because Kaiser offered the same policy (with a blanket exclusion for hearing loss treatment) to all individuals, whether they were disabled or not, there was no discrimination.  *Id.*

The Ninth Circuit reversed.  "The ACA specifically prohibits discrimination in plan benefit design, and a categorical exclusion of treatment for hearing loss would raise an inference of

---

[2] This rule was in effect when CarDon designed and caused the Plan to impose the exclusion of coverage for Plaintiff's ABA therapy.

[3] Only one other federal appellate court has addressed a Section 1557 claim.  *See Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 239 (6th Cir. 2019).  There, the Sixth Circuit similarly concluded that the "grounds of" and "enforcement mechanisms" of Section 504 were incorporated into Section 1557.  *Id.*  However, the *Doe* plaintiffs (who challenged a health plan rule that required them to obtain HIV medications from a mail order pharmacy rather than at their local retail pharmacy), did not plead intentional discrimination, only disparate impact discrimination.  *Id.*  The Sixth Circuit concluded that disparate impact discrimination claims are not available under either Rehabilitation Act § 504 or Section 1557.  *See id.,* at 238, 240-241.  No claim for disparate impact discrimination is pled here.

discrimination against hearing disabled people." *Id.*  The *Schmitt* court reasoned that benefit

design "inherently involves intentional conduct." *Id.* at 954.  However, it concluded that the

ACA did not automatically bar all categorical exclusions of treatment for disabling conditions.

*Id.* at 957.  Instead, once a plaintiff pleads intentional discrimination in benefit design, the

covered entity must identify reasonable non-discriminatory standards for the imposition of the

exclusion.  *Id.* at 958.  The reasonableness of the covered entity's justification for the

categorical exclusion, however, cannot be determined on a motion to dismiss or a motion on

the pleadings.  *See id.*

Challenges to discriminatory benefit design have been brought in district courts in the

Seventh Circuit and around the country against both health insurers and employers or plan

sponsors.  *See, e.g., Boyden v. Conlin*, 341 F. Supp. 3d 979, 989 (W.D. Wis. 2018) (Section 1557

challenge to transgender health exclusion in self-funded plan for state employees); *Flack v. Wis.

Dept. of Health Servs.*, 328 F. Supp. 3d 931, 947 (W.D. Wis. 2018) (Section 1557 challenge to

transgender health exclusion in Wisconsin Medicaid program); *Briscoe v. Health Care Serv.

Corp.*, 281 F. Supp. 3d 725, 738 (N.D. Ill. 2017) (alleging Section 1557 gender discrimination in

health insurance plans for failing to provide lactation services); *Mullen v. S. Denver Rehab., LLC*,

2020 U.S. Dist. LEXIS 88638, at *33-36 (D. Colo. May 20, 2020) (hospital is subject to Section

1557 in disability discrimination claim brought by patient); *Callum v. CVS Health Corp.,* 137 F.

Supp. 3d 817, 848 (D.S.C. 2015) (retail drug store is subject to Section 1557 due to Medicaid and

Medicare prescription payments, even when the claim was brought by a non-

Medicaid/Medicare customer), among many others.

**C.**     **Plaintiff Adequately Alleged an Alternative Claim Under Section 1557.**

Section 1557 creates a private cause of action.  *Callum*, 137 F. Supp.3d at 848; *Esparza v. Univ. Med. Ctr. Mgmt. Corp.*, 2017 U.S. Dist. LEXIS 142944, *9 (E.D. La. Sep. 5, 2017).  Based on the "grounds" of RA § 504, Plaintiff plausibly pled a Section 1557 disability discrimination claim when he alleged (1) he is a qualified individual with a disability, as defined by RA § 504; (2) he was subjected to discriminatory benefit design by a "covered entity" that receives federal financial assistance; and (3) the denial and discrimination was on the basis of the plaintiff's disability.  42 U.S.C. § 18116(a); *see Burks v. Wis. DOT*, 464 F.3d 744, 755 (7th Cir. 2006); *Massey v. Churchview Supportive Living, Inc.*, 2018 U.S. Dist. LEXIS 27156, at *5 (N.D. Ill. Feb. 21, 2018).  Specifically, Plaintiff alleges that (1) he is a qualified individual with a disability, ASD (Dkt. No. 31, ¶¶ 6.1-6.3, 9.4); *see* 29 U.S.C. § 705(20)(B)); (2) He was subjected to intentional discrimination by CarDon, a covered entity, when it designed and directed the Plan to administer a categorical exclusion of all coverage for ASD (Dkt. No. 31, ¶¶ 4.3-4.5; 6.29-6.32, 9.3, 9.5-9.8); and (3) But for the application of the exclusion, the services that the Plaintiff seeks would be covered under the Plan, such that he was discriminated against on the basis of his disability (Dkt. No. 31, ¶¶ 6.4-6.8, 6.18, 6.20).

**D.**     **Plaintiff May Pursue a Section 1557 Claim Against Defendant CarDon.**

In their second Motion on the Pleadings, Defendants do not dispute that Plaintiff is a "qualified individual with a disability" nor that CarDon is a "covered entity" under Section 1557. They do not dispute that a categorical exclusion of all coverage for ASD is a form of disability discrimination under Section 1557, or the legal standard for pleading a claim under Section 1557.  Their **only** objection to the Plaintiff's Section 1557 claim is that the ACA's anti-

discrimination statute cannot be enforced by T.S., a disabled beneficiary in the CarDon plan.

Dkt. No. 37, p. 2 ("T.S. is not a proper plaintiff under the ACA.").  Defendants are flatly wrong.

**No court has held that beneficiaries enrolled in a covered entity's health plan do not**

**have standing to sue under Section 1557**.  Defendants fail to cite to a single Section 1557 case

to support their interpretation. To the contrary, at least one court in the Seventh Circuit has

concluded that an enrollee in employee health plan where the employer receives federal

financial assistance may bring a Section 1557 challenge to a discriminatory exclusion.  *See*

*Boyden*, 2018 U.S. Dist. LEXIS 79753, at *23 (employer that receives federal financial assistance

is proper defendant in Section 1557 challenge to health plan exclusion of all coverage related to

gender dysphoria); *see also, Briscoe,* 281 F. Supp. 3d at 737 ("§ 1557 provides a private right of

action" for insureds to challenge discriminatory benefit design related to lactation services);

*Callum*, 137 F. Supp. 3d at 852-53 (retail pharmacy is "covered entity" subject to Section 1557

due to receipt of Medicare Part D funds, even when plaintiff did not allege that he was a

Medicare recipient); *Rumble v. Fairview Health Servs.*, 2015 U.S. Dist. LEXIS 31591, at *34 (D.

Minn. Mar. 16, 2015) (non-Medicaid/Medicare patient permitted to challenge hospital's

discriminatory treatment:  "A potential plaintiff need not seek medical care specifically from

the part of the organization that receives federal funding.").

Ignoring Section 1557 caselaw, defendants try to "leapfrog" caselaw from Title VI into

Section 1557, by way of Rehabilitation Act § 504.  Defendants argue that since Title VI was the

"model" for Section 504, and Section 504 was "incorporated" into Section 1557, the same

limitations that courts have imposed on Title VI claims are automatically imposed on Section

1557.  Dkt. No. 37, p. 5.  Defendants' simplistic analysis does not hold water for at least the following *four* reasons:

1.  **Section 1557 Incorporates Only the Grounds and Enforcement Mechanisms of Section 504.**

The plain language of Section 1557 reveals that only the "ground" and "enforcement mechanisms" of Section 504 (*and none of Title VI*) are incorporated into the disability prong of Section 1557.  *See Schmitt,* 965 F.3d at 951–952; 85 Fed. Reg. 37,171.  Section 504's incorporation is very limited:  "A prohibited 'ground' for discrimination is not typically understood to encompass the legal elements necessary to establish a discrimination claim; it is simply the protected classification at issue." *Schmitt,* 965 F.3d at 951–52.  "And 'enforcement mechanism' may mean no more than 'the process for compelling compliance with a substantive right, not the substantive right itself.'" *Id.; see also, Kleber v. CareFusion Corp.*, 914 F.3d 480, 484 (7th Cir. 2019).  District courts have reached the same conclusion the Ninth Circuit did in *Schmitt. See York v. Wellmark, Inc.*, 2017 U.S. Dist. LEXIS 199888, at *52 (S.D. Iowa Sep. 6, 2017) ("The plain meaning of these two sentences combined is clear and unambiguous – claims for discrimination are available on the grounds prohibited in the four listed federal civil rights statutes, and are to be addressed under the … corresponding enforcement mechanisms of the four statutes").  The elements borrowed from Section 504 are limited to just the ground and enforcement mechanisms.  "Section 1557 of the ACA *extends* the protections of Section 504 of the Rehabilitation Act … *in the context of the ACA.*"  *Huffman v. Univ. Med. Ctr. Mgmt. Corp.,* 2017 U.S. Dist. LEXIS 180999, at *5-*6 (E.D. La. Oct. 31, 2017) (emphasis added).

This limited incorporation of Section 504 is consistent with the purpose of the ACA.  *See King v. Burwell,* 576 U.S. 473, 493 (2015) ("We cannot interpret federal statutes to negate their

own stated purposes").  The ACA was enacted to provide people with serious health conditions

or disabilities meaningful access to health coverage.  The ACA's focus on non-discriminatory

benefit design appears throughout the statute's text.  *See* 42 U.S.C. §§ 300gg-6, 18022(b)(4)(B),

18116(a).  The ACA specifically targets a few of the most pernicious forms of benefit design

discrimination, including lifetime and annual dollar caps on health benefits and exclusions of

mental health and substance use treatment.  *See, e.g.,* 42 U.S.C. §§ 300gg-11, 18022(b)(1)(E).

Under Section 1557, Congress provided a general prohibition of other forms of disability

discrimination that occur in the design of health benefits. *See* 42 U.S.C. § 18116(a).  The scope

of the ACA's anti-discrimination principle was never intended to be limited to only direct

beneficiaries of Medicaid and Medicare services (who were already subject to Section 504's

general anti-discrimination principle).  Barring T.S. and other disabled people from enforcing

the ACA's anti-discrimination requirements in a health benefit plan designed by a covered

entity would undermine the very purpose of the law.

      **2.**      **Seventh Circuit Caselaw on RA § 504 Does Not Require Plaintiff T.S. To Be an "Intended Beneficiary."**

Defendants ignore relevant Seventh Circuit caselaw under Section 504 that does not

require the plaintiff to be an "intended beneficiary" of federal financial assistance in order to

bring a lawsuit.  In *Massey*, an employee of an assisted living facility alleged disability

discrimination in employment in violation of RA § 504.  2018 U.S. Dist. LEXIS 27156, at *3. In

that case, the district court concluded that the plaintiff merely needs to allege that the federal

funding is connected to the plaintiff's employment, in order to survive a motion to dismiss.  *Id.*

at *10–11 ("The Court can reasonably infer from the Amended Complaint that Massey's

position…existed as part of Churchview's assisted living facilities").  The *Massey* court rejected

the defendants' argument that only "direct beneficiaries of the relevant federal funding" can bring a RA § 504 claim.  *Id.*  It concluded that a RA § 504 plaintiff is not required to be a "direct beneficiary" of Medicaid or Medicare payments:

> Contrary to Defendants' argument, Massey is not required to show she is a "direct beneficiary" of the federal funds; rather, the Act "prohibits employment discrimination regardless of the purpose of the federal financial assistance." *Consol. Rail Corp. ("CONRAIL") v. Darrone,* 465 U.S. 624, 635, 104 S. Ct. 1248, 79 L. Ed. 2d 568 (1984). Massey need only show "some type of connection" between her employment and the program or activity receiving such funding.

*Id.* at *11; *Foss v. Chicago*, 817 F.2d 34, 37 (7th Cir. 1987) ("§ 504 may require that the entire institution be treated as the 'program,' thereby rendering all of its programs and activities subject to § 504."); *see also Ruffin v. Rockford Mem'l Hosp.*, 181 F. App'x 582, 584 n.** (7th Cir. 2006); *Rose v. Cahee*, 727 F. Supp. 2d 728, 737 (E.D. Wis. 2010) ("Acceptance of such federal funds obligates an entity to comply with the requirements of the Rehabilitation Act and opens them up to liability for violating the Act."). [4]  None of these cases limit the scope of anti-discrimination protections under RA § 504 to only "direct beneficiaries" of federal funds.

### 3.    Title VI's Limitations and Purpose Do Not Apply to Section 1557.

Defendants' reliance on Title VI caselaw is misplaced.  Defendants rely heavily on *Simpson v. Reynolds Metals Co.*, 629 F.2d 1226, 1232 (7th Cir. 1980), which was decided before both the Supreme Court's decision in *CONRAIL* and the Seventh Circuit's decision *Foss*.  In

---

[4] Although unnecessary, Plaintiff could easily amend the Complaint to include additional allegations to demonstrate that Plaintiff's health coverage has a "connection" to the Medicaid and Medicare funding received by CarDon. *See* Fed. R. Civ. P. 15(a)(2); *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 523 (7th Cir. 2015).  Plaintiff T.S. is a Medicaid recipient, and he became a Medicaid recipient solely to receive the ABA therapy services excluded by CarDon.  Chandler Decl., ¶¶3-7.  His mother's employment at CarDon as well as her employment-related health benefits are paid out of CarDon's general assets and are a direct result of the Medicaid and Medicare funding that CarDon receives. *Id.; see Massey,* 2018 U.S. Dist. LEXIS 27156, at *11.

*Simpson*, the Seventh Circuit found that the receipt of federal funds for a special apprenticeship program did not subject the entire business enterprise to non-discrimination protections under RA § 504. *Id.* at 1235. The Seventh Circuit's decision turned on the court's interpretation of Congress's intent in enacting RA § 504. *Id.* at *1233 ("We fail to see how this section manifests an intent by Congress that § 504 impose a general requirement upon recipients of federal grants not to discriminate against handicapped employees who are not involved in a program or activity receiving such assistance.").

A few years later, however, the Supreme Court concluded in *CONRAIL*, 465 U.S. at 631–32, that RA § 504 is not limited to only discrimination claims brought by "intended beneficiaries" of the federal assistance program. The Supreme Court noted that "Congress … felt it necessary to amend the statute to clarify whether § 504 was intended to prohibit other types of discrimination as well." *Id.* at 632. As a result, RA § 504 is not limited in the same manner as Title VI claims. *Id.* at 632–33.

The Seventh Circuit in *Foss* followed the decision in *CONRAIL. Id.*, 817 F.2d at 35 (rejecting limitations on the scope of a Section 504 claim, "when funds are non-earmarked and their use is left to the recipient's discretion, the program or activity should be defined not only by the nature of the federal grant, but also in part by the recipient's use of those funds."). In RA § 504 cases involving receipt of Medicaid and Medicare funds by health care entities (including nursing homes like CarDon), district courts in the Seventh Circuit and across the country have followed *CONRAIL* and *Foss,* not *Simpson,* and concluded that receipt of federal financial assistance is sufficient to subject the recipient program to the non-discrimination requirements of RA § 504. *See Massey,* 2018 U.S. Dist. LEXIS 27156, at *9 (collecting cases).

Defendants' application of Title VI to Section 1557 also ignores the purpose of Section 1557. Congress expressly limited jurisdiction under Title VI to just those activities to which assistance is extended.  *See* 29 U.S.C. § 794(b)(1)(B); *Shebley v. United Cont'l Holdings, Inc.*, 357 F. Supp. 3d 684, 694 (N.D. Ill. 2019).  Congress took the opposite approach in Section 1557, explicitly extending Section 1557's reach to the entire "covered entity" so long as any part of it received Federal financial assistance.  42 U.S.C. § 18116(a).  As a result, Defendants' Title VI cases are irrelevant.  *See* Dkt. No. 37, pp. 5-6, *citing to Vuciecevic v. MacNeal Mem'l Hosp.*, 572 F. Supp. 1424, 1430 (N.D. Ill. 1983); *Shebley*, 357 F. Supp. 3d at 694; *Bissada v. Ark. Children's Hosp.*, 2009 U.S. Dist. LEXIS 31831, at *33 (E.D. Ark. April 14, 2009); *Doe v. St. Joseph's Hosp. of Fort Wayne*, 788 F.2d 411 (7th Cir. 1986); *Parks v. Speedy Title & Appraisal Review Servs.*, 318 F. Supp. 3d 1053, 1068 (N.D. Ill. 2018); *Doe v. Woodridge Elem. Sch. Dist. No. 68 Bd. of Educ.*, 2005 U.S. Dist. LEXIS 7023, at *5 (N.D. Ill. Apr. 13, 2005).

### 4.   Federal Regulators Agree that Covered Entities Like CarDon are Subject to Section 1557 in all Activities.

Federal regulators under both the Obama and Trump administrations also agree:  when an entity (1) is principally engaged in the business of health care and (2) receives federal financial assistance in any part of its activities, it is subject to the requirements of Section 1557 in all of its activities – including in the design of health benefits for which it is responsible.  85 Fed. Reg. 37,171 (The term "health program or activity" encompasses *all of the operations* of entities that are "principally engaged in the business of providing healthcare"); 85 Fed. Reg. 37,177 ("The Department will enforce vigorously Section 1557's prohibition on discrimination on the basis of disability against all covered entities, including when discrimination is alleged to have taken place in *benefit design*.").  Defendants willfully misread the federal guidance when

they argue that the new 2020 rulemaking introduces the Title VI limitations into Section 1557. *See* Dkt. No. 37, p. 6, *citing to* 85 Fed. Reg. 37,173. The provision Defendants quote focuses on the plan itself – ***not the actions of CarDon, the plan sponsor***. *See id.* ("To the extent that employer-sponsored group health plans do not receive Federal financial assistance and are not principally engaged in the business of providing health care (as set forth in the rule) they would not be covered entities."). Here, Plaintiff specifically alleged that CarDon, the "covered entity," designed the discriminatory benefit and directed the Plan to implement the design, despite its obligation to comply with Section 1557. Dkt. No. 31, ¶¶ 1.3, 4.4-4.5, 6.30, 9.5-9.8. This is materially different from a situation where a covered entity purchases insurance for its employees from a third-party insurer – in that situation, it would make sense to the conclude that the "group health plan" is not part of the covered entity. In contrast here, the Plan is designed, funded and controlled entirely by CarDon, the covered entity. CarDon is properly the subject of Plaintiff's Section 1557 claim. Even the 2020 regulations maintain that covered entities, such as CarDon, may not discriminate in the design of health benefits. "Section 1557's prohibition on discrimination on the basis of disability against all covered entities, including when discrimination is alleged to have taken plan in benefit design" remains enforceable even under the new regulations. 85 Fed. Reg. 37,177. Moreover, the coverage denials at issue in this case occurred between February 2019 and March 2020 – months before the issuance of the federal commentary on which CarDon now relies. *See* Dkt. No. 31 at 15 (Prayer for Relief ¶ C).[5]

---

[5] There is simply no evidence that Congress or federal regulators intended to permit covered entities like CarDon to use discriminatory exclusions to evade their responsibility to cover disabled enrollees like T.S. The practical effect of CarDon's exclusion is that the State of Indiana now pays for T.S.'s treatment (and that of other affected CarDon enrollees), rather than CarDon. In effect, CarDon's discriminatory practices are subsidized by the State of

## IV.   CONCLUSION

This Court should deny Defendants' Second Motion on the Pleadings in full.  CarDon is a

"covered entity" subject to Section 1557.  Plaintiff T.S. may pursue his claim for disability

discrimination against CarDon for discriminating on the basis of disability in the design of the

health benefits of the CarDon health plan.

RESPECTFULLY SUBMITTED AND DATED this 3rd day of November, 2020.

SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC

  _/s/ Eleanor Hamburger_
Eleanor Hamburger, *Admitted Pro Hac Vice*
3101 Western Avenue, Suite 350
Seattle, Washington 98121
Tel. (206) 223-0303; Fax (206) 223-0246
Email: ehamburger@sylaw.com

TERRELL MARSHALL LAW GROUP PLLC
Toby J. Marshall, *Admitted Pro Hac Vice*
Blythe H. Chandler, *Admitted Pro Hac Vice*
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Tel. (206) 816-6603; Fax (206) 319-5450
Email:  tmarshall@terrellmarshall.com
Email:  bchandler@terrellmarshall.com

SAEED & LITTLE, LLP
Syed Ali Saeed (#28759-49)
1433 North Meridian Street, Suite 202
Indianapolis, Indiana 46202
Tel. (317) 614-5741; Fax 1-888-422-3151
Email:  ali@sllawfirm.com

*Attorneys for Plaintiff*

---

Indiana and other taxpayers, including those employers that played by the rules and eliminated such discriminatory exclusions.  CarDon should not be permitted to continue to discriminate with impunity.

**Certificate of Service**

I, Eleanor Hamburger, hereby certify that on November 3, 2020, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to the following:

> W. James Hamilton (#20155-49)
> Andrew M. McNeil (#19140-49)
> Mark A. Wohlford (#31568-03)
> BOSE McKINNEY & EVANS LLP
> 111 Monument Circle, Suite 2700
> Indianapolis, Indiana 46204
> Telephone: (317) 684-5000
> Facsimile: (317) 684-5173
> Email: jhamilton@boselaw.com
> Email: amcneil@boselaw.com
> Email: mwohlford@boselaw.com
>
> *Attorney for Defendants, Heart of CarDon, LLC and Heart of CarDon, LLC Employee Benefit Plan*

DATED this 3rd day of November, 2020.

> SIRIANNI YOUTZ
> SPOONEMORE HAMBURGER PLLC
>
> _/s/ Eleanor Hamburger_____
> Eleanor Hamburger, *Admitted Pro Hac Vice*
> 3101 Western Avenue, Suite 350
> Seattle, Washington 98121
> Tel. (206) 223-0303; Fax (206) 223-0246
> Email: ehamburger@sylaw.com
>
> *Attorneys for Plaintiff*