UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| T.S., by and through his parents and guardians, T.M.S. and M.S., individually and derivatively on behalf of the Heart of CarDon, LLC Employee Benefit Plan, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 1:20-cv-01699-TWP-TAB |
| HEART OF CARDON, LLC, and HEART OF CARDON, LLC EMPLOYEE BENEFIT PLAN, | ) ) ) ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS ON COUNT III**

This case arose from CarDon's employee benefit plan's exclusion of benefits for autism spectrum disorders and related behavioral conditions. This permanent exclusion of benefits is expressly permitted by the Parity Act. *See* 29 C.F.R. § 2590.712(a). In an effort to avoid that permissible exclusion, T.S., by and through his parents and guardians, T.M.S. and M.S., individually and (purportedly) on behalf of the Heart of CarDon, LLC Employee Benefit Plan (collectively, "T.S.") brought a discrimination claim under Section 1557 of the Affordable Care Act ("ACA").

In his response brief, T.S. agrees that Section 1557 incorporated both the "grounds" and the "enforcement mechanisms" of Section 504 of the Rehabilitation Act ("Section 504"). (ECF No. 40, Br. at 7, 12-13.) T.S. also acknowledges that courts have held that the incorporation of Section 504's enforcement mechanisms into the statute means that disparate-impact claims fail as a matter of law because Section 504 does not permit such claims and therefore Section 1557

of the ACA does not allow them either. (ECF No. 40, Br. at 8 n.3.) Further, T.S. does not dispute that Section 1557 of the ACA's adoption of the grounds and enforcement mechanisms of other anti-discrimination statutes means that certain Section 1557 claims fail as a matter of law for deficiencies in the processes and procedures of those enforcement mechanism statutes. (ECF No. 37 at 4-5.) Finally, T.S. agrees that CarDon and the employee benefit plan (the "Plan") are not one and the same. (ECF No. 40, Br. at 16-17.)

Despite these concessions, T.S. insists the defendants are "flatly wrong" and rely upon a "simplistic analysis" when they say that T.S. is an improper plaintiff under Section 504 and therefore under Section 1557 of the ACA. (ECF No. 40, Br. at 11-12.) T.S.'s conclusion is unsupported by his arguments. T.S.'s response brief uses two primary methods to attack the defendants' motion. First, T.S. tries to overwhelm the reader with a gaggle of case citations, claiming that these cases rebut the defendants' motion. Second, T.S. argues that the intent of Section 1557 requires that the Court find this claim viable. Both arguments fail.

### A. T.S.'s Case Law Does Not Support T.S.; It Either Supports the Defendants or Is Irrelevant.

T.S. first seeks to blitz the field by volume, citing and referencing a high number of cases. T.S.'s cited authority, however, either overwhelmingly supports precisely what the defendants are saying or completely talks past the defendants and fails to address their argument altogether. Indeed, the first case T.S. analyzes in depth, *Schmitt v. Kaiser Foundation Health Plan of Washington*, 965 F.3d 945 (9th Cir. 2020) (ECF No. 40, Br. at 8), acknowledges that "Title VI served as the model for Title IX, the Age Discrimination Act, and [Section 504]" and assumes "that the case law construing [Section 504] generally applies to claims under section 1557 for disability discrimination by a health care insurer." *Id.* at 953-54. This is a nod to the defendants' "simplistic analysis."

2

Next, the heart of T.S.'s rebuttal argument is that enrollees "in employee health plan[s] where the employer[s] receive[] federal financial assistance may bring a Section 1557 challenge to a discriminatory exclusion"—whether those enrollees are intended beneficiaries of the federal financial assistance or not. (ECF No. 40, Br. at 11.) T.S. then puts forward several cases that do nothing to support this argument. (ECF No. 40, Br. at 11.)

The first case in the long string of citations, *Boyden v. Conlin*, 341 F. Supp. 3d 979 (W.D. Wis. 2018), considered whether the defendants were proper **defendants under Title VII**—not proper plaintiffs under Section 1557. *Id.* at 997-98. Moreover, the only aspect of the decision pertaining to a plaintiff's rights was the finding that the ACA allows for a private right of action—a matter not in dispute on this motion. *Id.* at 998. In short, this case simply does not address a situation analogous to T.S.'s case or the legal arguments supporting the defendants' motion for judgment on the pleadings.

The second case, *Briscoe v. Health Care Services Corporation*, 281 F. Supp. 3d 725, 737 (N.D. Ill. 2017), supports the defendants, not T.S. In *Briscoe*, the court stated that Congress used the enforcement mechanism statutes in Section 1557 of the ACA "to import the various different standards and burdens of proof into a Section 1557 claim, depending upon the protected class at issue"—which is the defendants' point. *Id.* at 738. (quoting *Se. Pennsylvania Transp. Auth. v. Gilead Scis., Inc.*, 102 F. Supp. 3d 688, 698-99 (E.D. Pa. 2015)). It then looked to Title IX and found that the plaintiffs' sex discrimination claim under Section 1557 of the ACA failed as a matter of law because Title IX does not allow for disparate impact claims. *Id.* In making that legal conclusion, the court in *Briscoe* applied the same logic and legal reasoning—the same "simplistic analysis"—the defendants used in this case with respect to Section 504. The court reasoned: Title VI is "the model for Title IX"; "Title IX must be interpreted and applied the same

way as Title VI"; thus "Plaintiffs may not assert Title IX discrimination claims premised upon a disparate-impact theory"; and therefore "Plaintiffs cannot proceed with a disparate-impact claim under § 1557." *Id.* at 738-39.

The third case in T.S.'s parenthetical list, *Callum v. CVS Health Corporation*, 137 F. Supp. 3d 817 (D.S.C. 2015), involved a plaintiff who was a customer/patient of an entity receiving Medicare funds and was denied services due to his protected statuses. *Id.* at 853. This is precisely the scenario that T.S. did not and cannot plead here—which is why T.S.'s ACA claims fails, which the defendants pointed out in their primary brief. (*See* ECF No. 37 at 6-7.)

The final case cited by T.S. in this section of his brief is similarly unhelpful to T.S. *See Rumble v. Fairview Health Servs.*, No. 14-CV-2037 SRN/FLN, 2015 WL 1197415, at *1, *7 (D. Minn. Mar. 16, 2015) (patient sued a hospital and physicians receiving federal funding under Section 1557 for alleged discriminatory treatment and services). In that case, the court acknowledged the same logic and legal reasoning—the "simplistic analysis"—put forward by the defendants. The court stated that "[i]n order for the Medicare and Medicaid funds to qualify as 'federal financial assistance' relevant for section 504 and Title VI [and therefore Section 1557], a civil rights plaintiff is regularly required to demonstrate that the Medicare and Medicaid funds were used for a particular purpose." *Id.* at *14. Consequently, to plead such a claim, the plaintiff had to allege facts that could raise the reasonable expectation that discovery would reveal evidence to substantiate the claim. *Id.* While that was plausible in *Rumble* (where the plaintiff was a patient of the defendants), federal funds being used for potential employment by a hospital, *see id.*, are irrelevant to T.S.'s claim as the beneficiary of a health care plan offered by CarDon. (*See* ECF No. 37 at 6-7.) That is, the court in *Rumble* had facts that caused it to consider

4

the question from the perspective of whether the defendants were proper—not whether the plaintiff was the correct party to bring a lawsuit.

A similar distinction undermines T.S.'s later contentions (1) that Seventh Circuit case law on Section 504 does not require T.S. to be a beneficiary of the federal funds and (2) that Title VI limitations do not apply to Section 1557. (*See* ECF No. 40, Br. at 13-16.) These arguments and the case law cited by T.S. in support of them rely on *Consolidated Rail Corporation v. Darrone*, 465 U.S. 624 (1984) ("*Conrail*"), which pops up in both sections of T.S.'s brief and which T.S. cites to claim that the defendants' argument relies on unreliable and outdated case law. (ECF No. 40, Br. at 13-15.)

But *Conrail* is a square peg to the round hole set forth by the defendants' motion and primary brief. *Conrail* states that Section 504 "prohibits **employment discrimination** by all recipients of federal financial aid, regardless of the primary objective of that aid[,]" holding that the focus of the 1973 Rehabilitation Act was to enhance the employment of the handicapped so a claim could move forward even if the business [defendant] involved "receives no federal aid the primary purpose of which is to promote employment." *Id.* at 632-34, 637 (emphasis added). In other words, *Conrail* focused on the employment-related purpose of the Rehabilitation Act of 1973 to minimize the primary purpose of the federal funding. Even so, *Conrail* reiterated the Supreme Court's previous interpretations of the Rehabilitation Act, which limited "the ban on [such] discrimination to the specific program that receives federal funds." *Id.* at 636.

This helps explain the outcomes of two other cases cited by T.S. post-*Conrail*, but it does nothing to help T.S. in this case. (ECF No. 40, Br. at 13-14.) First, in *Massey v. Churchview Supportive Living, Inc.*, No. 17 C 2253, 2018 WL 999900 (N.D. Ill. Feb. 21, 2018), the plaintiff-employee had to plead some connection between her employment and the program or activity

5

actually receiving the federal funding—and she did. *Id.* at *3-4. Likewise, in *Foss v. Chicago*, 817 F.2d 34 (7th Cir. 1987), the court broadly pronounced in *dicta* that when an institution receives non-earmarked federal aid, Section 504 of the Rehabilitation Act "***may require*** that the entire institution be treated as the 'program'" and subject to Section 504 for employment-related disability discrimination claims. *Id.* at 37 (emphasis added). However, for the actual plaintiff-employee in *Foss*, "the plaintiff's employment had no connection with any of the more narrowly defined programs or activities receiving federal financial assistance." *Id.* at 35. Therefore, his complaint was dismissed. *Id.* at 34, 37. Thus, *Conrail*, *Massey*, and *Foss* focused on whether the defendant was the proper defendant (and more specifically still required the proper program or activity) in Section 504 lawsuits involving alleged employment discrimination.

T.S.'s argument that those cases somehow confer standing to the beneficiary or enrollee of a group health plan rather than an employee in employment-related discrimination is simply unsupported. Moreover, it is not true that those cases make *Simpson v. Reynolds Metals Company*, 629 F.2d 1226 (7th Cir. 1980), outdated or obsolete. This is clear from the next two cases cited in T.S.'s brief after *Foss* and from the slew of cases in the defendants' primary brief that T.S. seeks to lump together and disregard entirely. (*See* ECF No. 40, Br. at 14-15.)

First, in *Ruffin v. Rockford Memorial Hospital*, 181 F. App'x 582 (7th Cir. 2006), the footnote that T.S. cites sets up a hypothetical and references *Grzan v. Charter Hospital of Northwest, Indiana*, 104 F.3d 116 (7th Cir. 1997), *abrogated on other grounds*, to discuss federal funding through Medicare and Medicaid payments under the Rehabilitation Act. *See Ruffin*, 181 F. App'x at 584 n.**. In *Grzan*, the plaintiff-patient's claim against the defendant-doctor failed because the doctor was not the recipient of federal funding but rather an employee of the defendant hospital, which was the direct recipient of federal funds through Medicaid and

Medicare programs. 104 F.3d at 119.[1] In explaining why the claim against the defendant doctor failed, the Seventh Circuit explained that Congress limited the scope of Section 504 to those who actually receive federal financial assistance because obligations under Section 504 are a contractual cost of the recipient's agreement to accept the federal funds. *Id.* at 119-20. In other words, "[b]y accepting the funds, one accepts the obligations that go along with it." *Id.* at 120. That would be true of the hospital, but it was not true of the doctor.

Likewise, in *Rose v. Cahee*, 727 F. Supp. 2d 728 (E.D. Wis. 2010), the plaintiff was a patient, and her claim against the defendant-doctor and defendant-clinic failed because those defendants were indirect beneficiaries of federal funds and received no Medicare or Medicaid directly. *Id.* at 733, 737-39. Thus, *Grzan* and *Rose* focus on and reinforce who may be a proper defendant in a Section 504 case; they do not address who may be a proper plaintiff. Nevertheless, those cases still are instructive here, because they make clear that whatever entity actually receives Medicare and Medicaid payments, it is the only viable defendant under Section 504. In other words, the divide between the entity directly receiving Medicare and/or Medicaid and another entity contractually sharing in general proceeds with it cannot be bridged with allegations of general asset sharing, as T.S. contends could somehow be the case in yet another amended pleading. *See Rose*, 727 F. Supp. 2d at 737; (*see* ECF No. 40, Br. at 14 n.4.)

Given the import of these cases, it is no surprise that T.S. seeks to make clear that its claim under Section 1557 of the ACA is directed at CarDon (rather than the Plan) because the Plan receives no federal funding. (ECF No. 40, Br. at 17.) Regardless, none of T.S.'s cases move the needle on the defendants' contention that T.S. is not a proper plaintiff. Indeed, this is where

---

[1] *Grzan* was abrogated to the extent it held that a discrimination claim under the Rehabilitation Act required a comparison between the disabled and the non-disabled, as opposed to disparate treatment between different classifications. *See Amundson ex rel. Amundson v. Wisconsin Dep't of Health Serv.*, 721 F.3d 871, 874 (7th Cir. 2013) (discussing limitations of *Grzan*).

*Simpson* and CarDon's other cited cases—which are post-*Conrail* and *Foss* and within in the Seventh Circuit—are instructive, as they require the plaintiff to be an intended beneficiary of the federal funding to have standing. (ECF No. 37 at 5-6.) Nothing in the host of cases that T.S. cited in his response brief undermines that legal principle, as who may be a proper defendant under a statute says nothing of who may be a proper plaintiff.

As established in the defendants' main brief, the proper party plaintiff in an ACA claim (which is based on Section 504 of the Rehabilitation Act, which is based on Title VI of the Civil Rights Act of 1964) is the intended beneficiary of, an applicant for, or a participant in a federally funded program. *Shebley v. United Continental Holdings, Inc.*, 357 F. Supp. 3d 684, 694 (N.D. Ill. 2019) (*citing Simpson v. Reynolds Metals Co.*, 629 F.2d 1226, 1235 (7th Cir. 1980) among other cases)). T.S. is none of those. Thus, T.S. spills a lot of ink and cites numerous cases to make points that fail to address the defendants' actual legal argument that T.S. is not in the correct class of individuals to bring a claim because T.S. is not an intended beneficiary of the federal funds involved. (ECF No. 37 at 5-6.)

**B. The Alleged Intent of Congress Does Not Supersede the Statute's Language.**

T.S.'s other attempt to undermine this otherwise unrebutted legal reality is to appeal to the purpose of the ACA and Section 1557, claiming that "[b]arring T.S. and other disabled people from enforcing the ACA's anti-discrimination requirements in a health benefit plan designed by a covered entity would undermine the very purpose of the law." (ECF No. 40, Br. at 1-2, 13, 17 n.5.) But the defendants are not advocating for a categorical ban on "disabled people" bringing lawsuits, nor are they seeking to prevent proper parties from bringing claims covered by the ACA anti-discrimination provisions. The defendants are simply stating that whoever seeks to bring a lawsuit under Section 504, and by extension Section 1557 of the ACA when claiming

disability discrimination, needs to be a proper plaintiff with standing, as required by law. This is not controversial.

In applying the plain language of the statutes involved and the case law interpreting the same, T.S. is not a proper plaintiff. It is not the function of the courts "to rewrite a constitutionally valid statutory text under the banner of speculation about what Congress might have" intended. *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2073 (2018) (quoting *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017)). In other words, the Court should disregard T.S.'s appeal to enforce the statute in a manner that ignores the statutory text in favor of alleged intentions. T.S.'s recourse, if anywhere, is with the Legislative Branch.

**Conclusion**

For the reasons set forth above and in the defendants' primary brief in support of its Motion for Judgment on the Pleadings on Count III, the defendants respectfully request that this Court enter judgment on the pleadings in their favor on this claim.

                                                                          Respectfully submitted,

                                                  */s/ Andrew M. McNeil*
                                                  Andrew M. McNeil (#19140-49)
                                                  Mark A. Wohlford (#31568-03)
                                                  W. James Hamilton (#20155-49)

                                                  BOSE McKINNEY & EVANS LLP
                                                  111 Monument Circle, Suite 2700
                                                  Indianapolis, IN 46204
                                                  (317) 684-5000; (317) 684-5173 (Fax)
                                                  amcneil@boselaw.com
                                                  mwohlford@boselaw.com
                                                  jhamilton@boselaw.com

                                                  *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 17, 2020, a copy of the foregoing "Reply in Support of Defendants' Motion for Judgment on the Pleadings on Count III" was filed electronically. Notice of this filing will be served on the following counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

| | |
|---|---|
| Syed Ali Saeed, Esq.<br>Saeed & Little, LLP<br>18 West Vermont Street<br>Indianapolis, IN  46204<br>ali@sllawfirm.com | Toby J. Marshall, Esq.<br>Blythe H. Chandler, Esq.<br>Elizabeth A. Adams, Esq.<br>Terrell Marshall Law Group PLLC936<br>North 34th Street, Suite 300<br>Seattle, WA  98103-8869<br>tmarshall@terrellmarshall.com<br>bchandler@terrellmarshall.com<br>eadams@terrellmarshall.com |
| Eleanor Hamburger, Esq.<br>Sirianni Youtz Spoonemore Hamburger PLLC<br>3101 Western Avenue, Suite 350<br>Seattle, WA  98121<br>ehamburger@sylaw.com | |

                                              */s/ Andrew M. McNeil*
                                              Andrew M. McNeil

3960291