UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| T. S. by and through his parents and guardians, T.M.S. and M.S., individually and derivatively on behalf of the Heart of CarDon, LLC Employee Benefit Plan, <br><br> Plaintiff, <br><br> v. <br><br> HEART OF CARDON, LLC, HEART OF CARDON, LLC EMPLOYEE BENEFIT PLAN, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. 1:20-cv-01699-TWP-TAB

## ENTRY ON DEFENDANTS' MOTIONS FOR JUDGMENT ON THE PLEADINGS

This matter is before the Court on two Motions for Judgment on the Pleadings filed pursuant to Rule 12(c) of the Federal Rule of Civil Procedure by Defendants Heart of CarDon, LLC ("CarDon") and Heart of CarDon, LLC Employee Benefit Plan ("the Plan") (collectively, the "Defendants") (Filing No. 22; Filing No. 36).[1]  Together, these Motions seek to dismiss all the claims in the Amended Complaint filed by Plaintiffs T.S., by and through his parents and guardians, T.M.S. and M.S., individually and derivatively on behalf of the Plan (collectively, "T.S.") (Filing No. 31).  T.S. initiated this action under the Employee Retirement Income Security Act of 1974 ("ERISA") and the Mental Health Parity and Addiction Equity Act (the "Parity Act"), as well as the Affordable Care Act (the "ACA"), asserting that Defendants impermissibly denied coverage for his Applied Behavioral Analysis ("ABA") therapy.  *Id.* at 1–2, 11–14.  In their motions for judgment on the pleadings, Defendants argue that "the Plan's Autism Exclusion is

---

[1] Though T.S. amended his complaint after Defendants first moved for judgment on the pleadings, their first Motion "remains live" because the two claims it addresses are grafted into the Amended Complaint (*see* Filing No. 36 at 1; Filing No. 32 at 1 n.1).

legal and permissible both on its face and as it has been applied to T.S." and that "T.S. is not a proper plaintiff under the ACA." (Filing No. 23 at 2; Filing No. 37 at 2.)  For the following reasons, the Court **grants** Defendants' Motion for Judgment on the Pleadings on T.S.'s ERISA claims and **denies** Defendants' Motion for Judgment on the Pleadings on T.S.'s ACA claim.

## I.    <u>BACKGROUND</u>

The following facts are not necessarily objectively true, but as required when reviewing a motion for judgment on the pleadings, the Court accepts as true the factual allegations in the Amended Complaint and draws all inferences in favor of T.S. as the non-moving party. *See Emergency Servs. Billing Corp. v. Allstate Ins. Co.*, 668 F.3d 459, 464 (7th Cir. 2012).

In the Amended Complaint, T.S. alleges the following.  Four-year-old T.S.'s healthcare coverage is provided through his parent T.M.S.'s employment with CarDon (Filing No. 31 at 3). In September 2018, T.S. was diagnosed with autism spectrum disorder ("ASD"), with the diagnosing physician recommending that he receive ABA therapy to help him "achieve developmental advances and maintain his gross and fine motor and speech and communication skills." *Id.* at 6–7.  Following pre-authorization for six months of services by the Plan's previous third-party administrator, T.S  began receiving ABA therapy in December 2018. *Id.* at 7.  The next month, January 2019, the Plan's third-party administrator changed to Cypress Benefit Administrators LLC ("Cypress"). *Id.* at 8.

In March 2019, Cypress sent an Explanation of Benefits ("EOB") denying coverage for T.S.'s ABA therapy. *Id.* at 8.  After initially explaining that the services were denied because an "'insurance update [was] needed from [the] member,'" Cypress issued a new EOB in June 2019 instructing that "'No benefits allowed for this service/diagnosis.  See the General Exclusions under your plan." *Id.* (quoting Filing No. 31-1 at 21, 32).  In a subsection titled "Behavioral Health"

under the "Exclusions" section—which is separate from the "General Exclusions" section referenced in the June EOB (*see* Filing No. 31-1 at 79–81)—the Plan excludes "'Charges for services, supplies, or treatment for Autism, Asperger's and Pervasive Developmental Disorders' and 'Charges for Applied Behavior Analysis (ABA Therapy).'" (Filing No. 31 at 8 (quoting Filing No. 31-1 at 139).) The Plan, however, "covers various medical/surgical services to treat ASD, including development delay and ASD screening/diagnostic services, prescription drugs [including Risperdal and Abilify], and pediatric visits." *Id.* at 9.

In August 2019, T.S.'s mother, pursuant to the terms of the Plan, appealed the denial of services to Cypress. *Id.* A March 31, 2020, letter confirmed that the claims were correctly denied because "the diagnosis [Autism Spectrum Disorder] is not covered." *Id.*; Filing No. 31-2 at 4–5. For that entire period—from February 2019[2] to March 2020—T.S. did not receive ABA therapy (Filing No. 31 at 9). T.S. then filed suit in this Court, *see generally id.*, and Defendants later moved for judgment on the pleadings on all three counts, (Filing No. 22; Filing No. 36).

## II.  <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the parties have filed a complaint and an answer.  Rule 12(c) motions are analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir. 2007); *Frey v. Bank One,* 91 F.3d 45, 46 (7th Cir. 1996).  The complaint must allege facts that are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*  Stated differently, the complaint must include "enough facts to state a claim to

---

[2] It is unclear why T.S. did not receive ABA therapy in February 2019 if coverage was not denied until March 2019.

relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (internal citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Like a Rule 12(b)(6) motion, the court will grant a Rule 12(c) motion only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend,* 163 F.3d 449, 452 (7th Cir. 1998) (*quoting Craigs, Inc. v. Gen. Elec. Capital Corp.,* 12 F.3d 686, 688 (7th Cir. 1993)). The factual allegations in the complaint are viewed in a light most favorable to the non-moving party; however, the court is "not obliged to ignore any facts set forth in the complaint that undermine the plaintiff's claim or to assign any weight to unsupported conclusions of law." *Id.* (*quoting R.J.R. Serv., Inc. v. Aetna Cas. & Sur. Co.,* 895 F.2d 279, 281 (7th Cir. 1989)). "As the title of the rule implies, Rule 12(c) permits a judgment based on the pleadings alone. . . . The pleadings include the complaint, the answer, and any written instruments attached as exhibits." *Id.* (internal citations omitted).

## III.   DISCUSSION

In the Amended Complain, T.S. alleges three counts. Count I: "Claim for recovery of benefits, clarification of rights under terms of the Plan, and clarification of right to future benefits under the Plan"; Count II: "Claim to enjoin acts and practices in violation of the terms of the Plan, to obtain other equitable relief, and to enforce the terms of the Plan"; and Count III: "Claim for Violation of the Affordable Care Act." (Filing No. 31 at 11–13.) Because Defendants' motions for judgment on the pleadings split their challenges between the claims, the Court will address each count in turn.

**A.**   **Count I (recovery of benefits and clarification of rights under ERISA and the Parity Act)**

Pursuant to ERISA, T.S. sues to "recover benefits due to him under the terms of his plan, to enforce rights under the terms of the plan, [and] to clarify his rights to future benefits under the terms of the plan." *Id.* at 11, 12; *see* 29 U.S.C. § 1132(a)(1)(B).  He alleges that the Plan failed to comply with "the requirements of the Federal Parity Act and its implementing regulations." *Id.* at 11.  While the Parity Act "permits plans to exclude all coverage for certain conditions[,] . . . the Plan's ASD-related exclusions are only exclusions for 'Behavioral Health' related to ASD, . . . not a complete exclusion for *all* care related ASD." *Id.* at 12 (emphasis added).  T.S. contends that the Plan violates the Parity Act both facially and as applied.  "***Facially***, the Plan violates the Parity Act by . . . [excluding] only mental health services to treat ASD," while covering "various medical/surgical services to treat ASD." *Id.* at 9 (emphasis in original). "***[A]s applied***," the Plan violated the Parity Act by excluding "ABA therapy to treat ASD while generally covering all outpatient medical/surgical services." *Id.* at 10 (emphasis in original).  Moreover, "[t]he Plan's decision to impose an ABA therapy exclusion . . . was not 'at parity' with its processes and procedures for determining the exclusion of other medical/surgical services." *Id.*

Because Defendants discretely challenge the facial and as-applied allegations, the Court will address the contentions separately.

**1.**   **Facial challenge**

Defendants argue that T.S.'s facial challenge fails "because he has not identified a 'treatment limitation' in the terms of the Plan." (Filing No. 23 at 11.) The Plan, Defendants maintain, broadly excludes "'[c]harges for services, supplies, or treatment for Autism, Asperger's, and Pervasive Developmental Disorders' or charges for ABA Therapy." *Id.* (quoting Filing No. 1-1 at 49, 139)).  Plainly, "the exclusion categorically denies coverage for ***all charges*** incurred" for

ASD-related treatment, so it is not a "treatment limitation" at all. *Id.* (emphasis in original). The facial challenge fails, then, because there is "no treatment limitation on a mental health service that may be compared to a medical/surgical care service." *Id.* at 11–12. And though the Plan covered "screening/diagnostic services and pediatric visits that could be utilized to diagnose [ASD]," these services and visits are "preventative care measures" and "screening tools," not treatments. *Id.* at 12. Moreover, the Plan specifically contemplates that " "to the extent 'another medical condition is identified through the course of diagnostic testing, any coverage of that condition [is] subject to Plan provisions.'" *Id.* (quoting Filing No. 1-1 at 139). Relatedly, while the Plan covered "prescription drugs that *could be* utilized for treatment of [ASD]," this potentiality "does not change the fact that the Plan denies all services, supplies, and treatments charged for [ASD]." *Id.* (emphasis added). If a doctor prescribed those medications to treat [ASD] rather than some other condition or disorder, the Plan could deny coverage or rightfully claw back any coverage erroneously provided. *Id.* Defendants argue that because "the Plan is neutral on its face by excluding all benefits for [ASD], [ ] T.S. has not and cannot plead a facial violation of the Parity Act." *Id.* at 13.

T.S. responds that the Plan includes a treatment limitation since it excludes "behavioral health services for ASD [but] not medical or surgical services." (Filing No. 29 at 15.) In other words, the Plan violates the Parity Act by covering "developmental delay and ASD screening and diagnostic services, prescription drugs, and ASD-related pediatric visits" but not behavioral health services like ABA therapy. *Id.* at 16. Though Defendants argue that "diagnostic services and pediatric visits that they covered are preventive care measures and screening tools," this impermissibly bifurcates treatment and care when "*[a]ll benefits* must be evaluated under the required parity analysis." *Id.* at 17 (emphasis added). As for additional specific ways the Plan

facially unequally provides benefits for ASD, T.S. argues that it "covers general anesthesia needed as a result of a 'Mental or Nervous Disorder [including ASD] that precludes dental Surgery in the office'" and "covers Risperdal and Abilify, two prescription medications approved by the FDA to treat ASD." *Id.* at 18 (quoting Filing No. 1-1 at 131; citing Filing No. 1-1 at 148). In sum, because "there is no categorical exclusion of ASD benefits under the Plan," T.S.'s claim for a facial violation of the Parity Act must survive.

Defendants reply by reiterating that "the Plan does not offer any benefits or services for ASD—the Plan excludes coverage categorically for that condition." (Filing No. 32 at 4.) Though the Plan "covers pediatric preventative and wellness visits and diagnostic services" that may uncover ASD, "it provides those coverages" to all beneficiaries. *Id.* The Plan, however, "still excludes coverage for ASD," irrespective of a covered service discovering the uncovered condition. *Id.* at 5. In short, the Plan's blanket exclusion of coverage for ASD-related treatment complies with the Parity Act's allowance for "categorical exclusion of conditions from coverage." *Id.* As for the specific instances T.S. points to as facial treatment limitations, "[t]hat the patient may need general anesthesia due to a 'Mental or Nervous Disorder' does not convert the dental procedure into a treatment of [ASD]." *Id.* at 6. And, again, "if the prescription medications otherwise covered under the Plan were prescribed for an excluded purpose, the Plan could seek recoupment." *Id.*

The Court is persuaded by the Defendants' arguments. "A permanent exclusion of all benefits for a particular condition or disorder . . . is not a treatment limitation." 29 C.F.R. § 2590.712(a). The Plan provides that "[c]harges for services, supplies, or treatment for Autism, Asperger's and Pervasive Developmental Disorders"—as well as "[c]harges for Applied Behavior Analysis (ABA Therapy)"—"are not covered by the Plan." (Filing No. 31-1 at 139.) By its plain

terms, the Plan comprehensively excludes coverage for charges arising from treatment for ASD (and specifically ABA therapy), a tolerable practice under the Parity Act. *Jane Doe v. United Behavioral Health*, No. 4:19-CV-07316-YGR, 2021 WL 842577, at *7 (N.D. Cal. Mar. 5, 2021) (noting that "a plan can choose to provide no mental health benefits at all without violating the Parity Act").[3] Only once a plan covers a mental health disorder, like ASD, does the Parity Act prohibit it from instituting separate treatment limitations for that condition. *Id.*; *see also Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1262 (D. Utah 2016) (While "the Parity Act does not require plans to provide mental health or substance use disorder benefits at all," if it does, it cannot impose "treatment limitations applicable only to mental health benefits.").

For example, when a plan *explicitly covered* treatment for ASD, it could not use a blanket exclusion "to deny coverage of ABA therapy" because that prohibition represented "a separate treatment limitation that applie[d] only to mental health disorders." *A.F. ex rel. Legaard v. Providence Health Plan*, 35 F. Supp. 3d 1298, 1315 (D. Or. 2014) (quotation omitted). In other words, by the exclusion applying "specifically and exclusively to mental health conditions," it violated the plain text of the Parity Act. *Id.* Here, on the other hand, the Plan *explicitly excludes* coverage for ASD. *See Doe*, 2021 WL 842577, at *8 (noting that a permissible exclusion under the Parity Act "concerns those instances where a complete exclusion of coverage for a 'condition or disorder' exist (e.g. Autism), and not merely to instances where the plan, as here, excludes benefits for particular treatments (e.g. ABA or IBT) for an already covered condition or disorder"). And while T.S. argues that the unrelated screening, dental-care, and prescription-medication

---

[3] T.S. submitted this case to the Court as additional authority (*see* Filing No. 49 at 1; Filing No. 49-1). In addition to *Doe*, T.S. submitted "the Southern District of Indiana's decision in *Smith v. Golden Rule Insurance Co.*, No. 1:20-cv-02066, 2021 WL 930224 (S.D. Ind. Mar. 11, 2021)." (Filing No. 49 at 1.). That recent case, however, is inapplicable because it involved a purported "treatment limitation" of an explicitly *covered*—not, as here, a specifically *excluded*— condition. *See Smith*, 2021 WL 930224, at *2 ("Covered expenses are amended to include charges incurred for the diagnosis and treatment of mental disorders, including substance abuse . . . ").

provisions discussed above bring ASD within the purview of Plan coverage, any potential conflict with the prescription provision—there is none with the screening and dental-care provisions (one is legally mandated while the other ensures provision of an independent covered service)—is controlled by the exclusion's categorical bar (*see* Filing No. 32 at 6).

Because there is no "treatment limitation" as contemplated by the Parity Act since the Plan categorically excludes coverage for ASD-related expenses, the Court **grants** Defendants' Motion for judgment on the pleadings on this claim.

### 2.   As-applied challenge

Defendants argue that "because of the categorical exclusion of coverage for the underlying disorder," there can be no as-applied disparity between mental health and medical/surgical treatments for ASD (Filing No. 23 at 13). Though "T.S. frames the as-applied claim as a question of the parity between the Plan's ABA Therapy exclusion and the Plan's coverage of all outpatient medical/surgical services," his requested benefits are "are not administered less favorably" because "they are outright excluded under the Plan." *Id.* (quotation omitted). In short, "T.S. cannot assert any facts to show that the exclusion of coverage for any services, supplies, or treatment of [ASD]" when coverage is categorically excluded. *Id.* at 14.

In response, T.S. maintains that that the Plan violates the Parity act, as applied, in two distinct ways: "(1) by excluding ABA therapy while generally covering outpatient medical/surgical services; and (2) by failing to apply its exclusion of ABA therapy to treat ASD 'at parity' with its coverage of outpatient medical or surgical services." (Filing No. 29 at 19.) First, while the Plan "covers a wide range of outpatient medical/surgical services," its exclusion of ABA therapy "is a 'separate treatment limitation' that applies exclusively to mental health benefits in violation of the Parity Act." *Id.* (citing 29 U.S.C. § 1185a(a)(3)(A)(ii)). In other words, the Plan

impermissibly excludes "outpatient ABA therapy for ASD and other developmental mental health conditions" but covers "substantially all outpatient treatment for medical or surgical benefits." *Id.* Second, the Plan's categorical exclusion of ABA—as opposed to its individualized evaluations for determining whether to deny medical/surgical services—"fails to treat mental health benefits 'at parity.'" *Id.* at 20 (citing 29 U.S.C. § 1185a(a)(3)(A)(ii)).

Defendants persuasively reply that because there is no "treatment limitation," there can be "no as-applied analysis." (Filing No. 32 at 6.) In other words, the claim fails when "there are no treatment limitations to weigh against medical or surgical benefits to see if they are 'at parity.'" *Id.*

In an as-applied challenge, a plaintiff must show that a defendant imposed "a treatment limitation" more stringently for "mental health or substance use disorder benefits" than it does for "medical/surgical benefits." 29 C.F.R. § 2590.712(c)(4)(i). A necessary condition for this claim, then, is an underlying limitation of a covered treatment. As noted above, the Plan categorically excludes coverage for services related to ASD, there can be no resultant "treatment limitation" for that disorder. Because the Plan unconditionally excludes coverage for ASD-related expenses, T.S.'s as-applied challenge fails, and the Court **grants** Defendants' Motion on the claim.

**B.     Count II (enjoin acts and practices, obtain equitable relief, and enforce terms under ERISA and the Parity Act)**

Defendants argue that T.S.'s request for equitable remedies fails because "where relief is available to a plan participant under 29 U.S.C. § 1132(a)(1)(B) [*i.e.*, Count I], relief is not warranted under 29 U.S.C. § 1132(a)(3) [*i.e.*, Count II] unless it is premised on different facts and raises different theories." (Filing No. 23 at 14.)  "The facts and theories alleged as between the two counts in this case do not meaningfully differ," Defendants contend, so Count II must be dismissed.  *Id.* at 14–15 (citing *W.P. v. Anthem Ins. Companies Inc.*, No. 115-cv-00562-TWP-TAB, 2017 WL 605079, at *6 (S.D. Ind. Feb. 15, 2017), *altered on reconsideration on a different*

*aspect of the case sub nom. W.P. by & through Pierce v. Anthem Ins. Companies, Inc.*, No. 115-cv-00562-TWP-TAB, 2017 WL 5192239 (S.D. Ind. Nov. 8, 2017)).   Moreover, any equitable remedies relating to a "class" are misplaced because "T.S. does not define any class, explain how he is an adequate representative for any class, or provide common questions of law and fact within the complaint for certifying a class." *Id.* at 15.   Finally, T.S. does not justify "bringing a claim on behalf of the Plan, and there does not appear to be authority for him to turn his allegations about being denied benefits into a right to demand the reformation and rewriting of Plan documents on behalf of and for the alleged benefit of other beneficiaries, plan participants, and the Plan itself." *Id.*

In response, T.S. contends that Defendants' arguments fail because

> (1) [his] §1132(a)(3) claims seek the type of equitable relief that is unavailable under §1132(a)(1)(B);
>
> (2) even if the claims sought identical relief (and they do not), dismissal at the pleading stage is premature because the § 1132(a)(3) claim was pleaded in the alternative; and
>
> (3) plan-wide equitable relief is available, even in an individual case, due to the special fiduciary duties imposed on Defendants in this ERISA action.

(Filing No. 29 at 20.)   First, T.S. seeks equitable relief for potential reformation of the Plan with enforcement of the revisions, for an injunction to stop Defendants from excluding ABA therapy for all plan participants with notice of the change, and for equitable monetary remedies. *Id.* at 21–21.   Second, "it is premature for the Court to conclude, at this very early stage of litigation, that the relief afforded under (a)(3) would be duplicative" when "[c]ases holding 'that litigants may not seek equitable remedies under § 1132(a)(3) if § 1132(a)(1)(B) provides adequate relief' are 'clearly irreconcilable with'" Supreme Court precedent. *Id.* at 25, 23 (quoting *Moyle v. Liberty Mut. Ret. Benefit Plan*, 823 F.3d 948, 962 (9th Cir. 2016)).   Finally, while conceding that an errant reference

to a "class" in the Complaint was "an error," T.S.'s request for plan-wide relief is a permissible equitable remedy under § 1132(a)(3) when "Defendants have a fiduciary duty to administer the plan in conformity with federal law, and in a consistent manner for all beneficiaries." *Id.* at 25–26.

Defendants reply that the Court, if it finds T.S. has adequately pled a Parity Act claim, must dismiss Count II "because there are no alternative facts or circumstances requiring equitable relief." (Filing No. 32 at 7.) Even though T.S. claims to pursue alternative equitable relief, Defendants argue that Count II really "seeks monetary relief arising out of Defendants' alleged failure to administer the Plan lawfully." *Id.*  And, contrary to T.S.'s argument, courts have held that "'an ERISA plaintiff is not permitted to repackage a denial-of-benefits claim as a claim for equitable relief.'" *Id.* (quoting *Roque v. Roofers' Unions Welfare Trust Fund*, No. 12 C 3788, 2013 WL 2242455, at *7 (N.D. Ill. May 21, 2013)) (quotation marks omitted).  Finally, while T.S. purportedly does not seek to represent a "class," he has failed to assert his right to seek "the alternative remedies of enjoining application of the Plan to deny ABA Therapy and reformation of the Plan documents" for all plan participants. *Id.* at 7–8.

The Court need not determine whether the equitable remedies sought by T.S. sufficiently differ from the legal relief he seeks because, as the Court discussed at length in the prior section, he has not established any violation of the Parity Act. *See Doe*, 2021 WL 842577, at *8. Accordingly, T.S. cannot seek any type of relief—whether it flows through § 1132(a)(1)(B) or through § 1132(a)(3)—when his underlying legal theory fails.  For this reason, the Court **grants** Defendants' Motion on the claim.

## C.    Count III (violation of the ACA and Rehabilitation Act)

T.S. also alleges that Defendants unlawfully discriminated against him and others under the ACA "[b]y excluding benefits for health care related to ASD, Asperger's[,] and pervasive

developmental disorders, and for ABA Therapy specifically." (Filing No. 31 at 14 (citing *Schmitt v. Kaiser Foundation Health Plan of Washington*, 965 F.3d 945 (9th Cir. 2020).)  Pertinent here, Section 18116(a) of Title 42 (i.e., "Section 1557" of the ACA) provides that "an individual shall not, on the ground prohibited under . . . section 794 of Title 29 [*i.e.*, "Section 504" of the Rehabilitation Act], be excluded from participation in, denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance."  Section 1557 goes on to instruct that "the enforcement mechanisms provided for and available under" Section 504 "shall apply for purposes of violations of this subsection."  42 U.S.C. § 18116(a).  Section 504, in turn, provides that no "individual with a disability" shall "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

T.S. contends that he is encompassed by Section 504 due to his ASD diagnosis and that CarDon is subject to Section 1557 "because it is principally engaged in the business of providing healthcare and receives federal financial assistance in the form of Medicaid and Medicare payments." (Filing No. 31 at 5, 13.)  So covered, T.S. contends that CarDon discriminated against him under the ACA in three ways: (1) by facially excluding "only people with ASD, Asperger's, or other pervasive developmental disorders" from coverage, (2) by using the exclusion as an impermissible "proxy" for denying coverage for people with ASD, Asperger's or other pervasive developmental disorders, and (3) by separately excluding all therapy for ABA therapy, which is "so closely associated with autism that the exclusion effectively discriminates on the basis of T.S.'s disability." *Id.* at 13–14.

13

Defendants argue that while a claim under Section 504 is, in fact, "triggered by a defendant's receipt of federal funds, individuals who are not beneficiaries of the *specific* federal funding cannot [bring] a lawsuit claiming disability discrimination against that entity." (Filing No. 37 at 2 (emphasis added).)  Section 1557 incorporates the enforcement mechanisms of Section 504, which include the limitation that "'the plaintiff must be the intended beneficiary of, an applicant for, or a participant in a federally funded program.'"  *Id.* at 5 (quoting *Simpson v. Reynolds Metals Co.*, 629 F.2d 1226, 1235 (7th Cir. 1980) ("Section 504 was modeled after, and Congress intended that it be enforced in the same manner as, the antidiscrimination mandate of § 601 of Title VI.  Thus, the limitations on judicial enforcement of Title VI apply to private suits brought under § 504").  Though T.S. asserts that CarDon "accepts federal funding through serving Medicare and Medicaid patients," his claim under the ACA, then, must fail because does not allege "that he is a beneficiary of Medicare and Medicaid payments received by CarDon." *Id.* at 2. In short, T.S.'s claim fails because Section 1557 applies "only to the aspects of an entity's operations that receive federal financial assistance," and "the Medicare and Medicaid payments CarDon receives as a healthcare provider to its patients are separate and unconnected to the Plan." *Id.* at 6–7 (citing *Shebley v. United Cont'l Holdings, Inc.*, 357 F.Supp. 3d 684, 694 (N.D. Ill. 2019)).

In response, T.S. maintains that CarDon, after passage of the ACA, is not "free to discriminate against participants and beneficiaries with" ASD who are enrolled in the Plan (Filing No. 40 at 6). And though CarDon asserts "that the ACA's prohibition on discriminatory benefits design may only be enforced by direct recipients of Federal financial assistance," it "fails to cite a single case applying its 'intended beneficiary' rule to limit a plaintiff's ability to sue a covered entity under Section 1557." *Id.* at 7.  In fact, "at least one court in the Seventh Circuit has concluded that an enrollee in employee health plan where the employer receives federal financial assistance may

bring a Section 1557 challenge to a discriminatory exclusion." *Id.* at 16 (citing *Boyden v. Conlin*, 341 F. Supp. 3d 979 (W.D. Wis. 2018); *Briscoe v. Health Care Services Corp.*, 281 F. Supp. 3d 725 (N.D. Ill. 2017); *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817 (D.S.C. 2015); *Rumble v. Fairview Health Servs.*, No. 14-CV-2037 SRN/FLN, 2015 WL 1197415 (D. Minn. Mar. 16, 2015)).

T.S. argues that instead of using applicable caselaw, Defendants "try to 'leapfrog' caselaw from Title VI into Section 1557." *Id.* He contends this argument fails for four reasons. First, "[t]he elements borrowed from Section 504 are limited to just the ground and enforcement mechanisms" and do not adopt any of Title VI. *Id.* at 17–18. Second, Seventh Circuit precedent does not require a plaintiff to be an intended beneficiary to bring a Section 504 claim. *Id.* at 18–19 (citing several cases involving plaintiff-employees bringing claims under Section 504). Third, Title VI's limitations do not apply to Section 1557: in Section 504 cases "involving receipt of Medicaid and Medicare funds by health care entities (including nursing homes like CarDon)," courts have "concluded that receipt of federal financial assistance is sufficient to subject the recipient program to the non-discrimination requirements." *Id.* at 19–20 (citations omitted). Fourth, federal regulators have pronounced that "'Section 1557's prohibition on discrimination on the basis of disability against all covered entities[ includes] when discrimination is alleged to have taken plan in benefit design.'" *Id.* at 21–22 (quoting 85 Fed. Reg. 37,177).[4]

---

[4] T.S. later submitted additional authority that purportedly "addresses the pleading standards for claims under Section 1557 of the Affordable Care Act (ACA) premised upon violations of the Rehabilitation Act, like Plaintiff's claim at issue in the motion, and legal arguments made by Defendants." (Filing No. 45 at 1.) But the Court agrees with Defendants, "It is unclear how this case advances T.S.'s position when the accompanying opinion appears to be entirely unrelated to the arguments set forth in the prior briefs. (*see* Filing No. 46 at 1). Indeed, the appellate panel instructs the district court to address, "in the first instance," whether the plaintiffs "did not adequately allege [defendant]'s receipt of 'federal financial assistance.'" (Filing No. 45-1 at 17 n.2; *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1212 n.2 (9th Cir. 2020)).

In reply, Defendants contend that "T.S. tries to overwhelm the reader with a gaggle of case citations" that do not even support his position (Filing No. 44 at 2, 3–5 (discussing cases)). Moreover, Defendants argue that many of the cases on which T.S. relies center "on the employment-related purpose of [Section 504]" and ultimately "focused on whether the defendant was the proper defendant … in Section 504 lawsuits involving alleged employment discrimination." *Id.* at 5–6. And two other cases that T.S. uses as support, Defendants note, involved unsuccessful suits against defendant-doctor providing medical services. *Id.* at 6–7 (discussing *Ruffin v. Rockford Memorial Hospital*, 181 F. App'x 582 (7th Cir. 2006); *Rose v. Cahee*, 727 F. Supp. 2d 728 (E.D. Wis. 2010)). Defendants then rejoin that a plaintiff must "be an intended beneficiary of the federal funding to have standing" to bring a Section 504 claim. *Id.* at 7–8. Finally, Defendants maintain that the Court should not consider T.S.'s "appeal to the purpose of the ACA and Section 1557." *Id.* at 8. Defendants contend that they merely argue that whoever seeks to bring a claim under the ACA "needs to be a proper plaintiff with standing, as required by law." *Id.* at 8–9. "This," Defendants conclude, "is not controversial." *Id.* at 9.

The Court respectfully disagrees. Ordinarily, Section 504 does not apply to self-funded group health plans because the entities offering the plans are typically not principally engaged in the business of providing health care, nor do they receive federal financial assistance. *See* 29 U.S.C. § 794(a), (b)(3)(A)(ii). Here, however, the Medicare and Medicaid payments CarDon receives as a healthcare provider slightly complicates matters—is CarDon now a "program or activity" that receives "Federal financial assistance" as contemplated by statutory framework established by Sections 1554 and 504? According to the plain text of the Section 504, the Court must answer yes.

"In matters of statutory interpretation," courts always "begin with the text." *KM Enterprises, Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 728 (7th Cir. 2013). And if "'the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case,' then that meaning controls and the court's 'inquiry must cease.'" *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)).  In the face of the interwoven web of cases quoted from the parties spanning decades of decisions (applying variously valid versions of pertinent and non-pertinent statutes), Section 504—since 1988—explicitly covers "*all of the operations of*" a "program or activity" that receives "Federal financial assistance." *See* 29 U.S.C. § 794(a), (b) (emphasis added); *see also Schroeder v. City of Chicago*, 927 F.2d 957, 962 (7th Cir. 1991) (discussing that this language was appended onto Section 504 so that "'program or activity' was expanded from a specific program or specific activity to 'all the operations' of [an institution] that conducted the program or activity").

This change came eight years after the Seventh Circuit instructed in *Simpson* (a case heavily relied upon by Defendants) that "the limitations on judicial enforcement of Title VI" — including a requirement that "the plaintiff must be the intended beneficiary of, an applicant for, or a participant in a federally funded program"—"apply to private suits brought under § 504." 629 F.2d at 1235.  Though Title VI and Section 504 may have placed parallel requirements on a plaintiff at one point, the two diverged—at least as far as this Entry is concerned—following the latter's 1988 amendment.  *See generally McMullen v. Wakulla Cty. Bd. of Cty. Commissioners*, 650 F. App'x 703, 706–07 (11th Cir. 2016) (determining that the 1988 amendment foreclosed an earlier, narrower interpretation stemming from, among other things, analysis of Title VI, *see Brown v. Sibley*, 650 F.2d 760, 768 (5th Cir. 1981) ("We turn then to our case law developed under Title VI and Title IX for guidance in explicating section 504.")).

In sum,

> Section 504 now defines a program or activity to include "all operations of . . . an entire corporation, partnership, or other private organization" if either (1) federal financial "assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole," or (2) the organization "is principally engaged in the business of providing education, health care, housing, social services, or parks and recreations" and the organization receives federal financial assistance.

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, No. 12 C 6066, 2012 WL 5307913, at *2 (N.D. Ill. Oct. 26, 2012), *on reconsideration*, No. 12 C 6066, 2013 WL 951147 (N.D. Ill. Mar. 12, 2013) (quoting 29 U.S.C. § 794(b)(3)(A)(i)-(ii)).  Here, the Amended Complaint explicitly alleges that CarDon falls into this second camp: "CarDon is a covered 'health program or activity' subject to Section 1557 because it is principally engaged in the business of providing healthcare and receives federal financial assistance in the form of Medicaid and Medicare payments." (Filing No. 31 at 5.) So, as soon as CarDon accepted funds through Medicaid and Medicare programs ("Federal financial assistance"), it was "'bound to adhere to the mandates of [Section 504],'" *Massey v. Churchview Supportive Living, Inc.*, No. 17 C 2253, 2018 WL 999900, at *3 (N.D. Ill. Feb. 21, 2018) (quoting *Baker v. Portnow*, 127 F. Supp. 3d 1259, 1261–62 (M.D. Fla. 2015)), in "all of [its] operations," 29 U.S.C. § 794(b). This, of course, included implementation of the Plan, which, according to T.S., "is designed, funded and controlled entirely by CarDon." (Filing No. 40 at 22; *see also* Filing No. 31 at 3 ("As 'Plan Sponsor,' CarDon designs the benefits to be offered under the Plan.").)  "All operations" means "all operations," after all.

Because "all of" CarDon's operations are covered by Section 504 of the Rehabilitation Act, T.S.'s claim under Section 1554 of the ACA can, at this stage in the litigation, proceed. *See Maxwell v. S. Bend Work Release Ctr.*, No. 3:09-CV-008-PPS, 2011 WL 4688825, at *5 (N.D. Ind. Oct. 3, 2011) (holding that a re-entry center was "a 'program or activity' within the meaning

of [Section 504 because it] defines that term as embracing 'all the operations' of a department or agency that receives federal financial assistance" and the center was "an operation or program of [a department of correction], which receives federal funding"). For the preceding reasons, the Court **denies** Defendants' Motion.

## IV.  CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings on T.S.'s ERISA and Parity Act claims, ([Filing No. 22](#)), and **DENIES** Defendants' Motion for Judgment on the Pleadings on T.S.'s ACA and Rehabilitation Act claim, ([Filing No. 36](#)).  Counts I and II are **DISMISSED WITH PREJUDICE**, as no amount of revision could cure their legal deficiencies.[5]  This action may proceed with respect to the claim in Count III.

**SO ORDERED.**

Date:  3/16/2021

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Blythe H. Chandler
TERRELL MARSHALL LAW GROUP PLLC
bchandler@terrellmarshall.com

Eleanor Hamburger
SIRIANNI YOUTZ SPOONEMORE HAMBURGER PLLC
ehamburger@sylaw.com

Syed Ali Saeed
SAEED & LITTLE LLP
ali@sllawfirm.com

Toby J. Marshall
TERRELL MARSHALL LAW GROUP PLLC
tmarshall@terrellmarshall.com

---

[5] *Cf. Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 & n. 3 (7th Cir. 2004) ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss.").

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
amcneil@boselaw.com

Mark Wohlford
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
mwohlford@boselaw.com

Winthrop James Hamilton
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
jhamilton@boselaw.com